ALLAN B. PENDLETON, Plaintiff in Error, *v.* BELMONT PERKINS AND THE CITY OF ST. LOUIS, Defendants in Error.

1. *Equity, bill in — Equitable garnishment.* — Where a debtor has absconded so that judgment cannot be obtained against him. and has no property in the State subject to attachment, but has money in a city treasury belonging to him, it may be reached by bill in equity, in the first instance, without a previous judgment at law, and without showing fraud or any other recognized ground of equitable jurisdiction. And the fact that cities are not liable under the statutory garnishment, will not protect them from such proceeding in equity.

*Error to St. Louis Circuit Court.*

BLISS, Judge, delivered the opinion of the court.

The plaintiff presents a bill in equity to compel the city of St. Louis to pay a debt due him from defendant Perkins, charging that Perkins has absconded, so that judgment cannot be obtained against him; .that he is insolvent and has no property in the State subject to attachment, but that there is money in the city treasury belonging to him. The city demurs to the petition, and judgment is rendered against the plaintiff on the demurrer, and the case comes here upon error. Three questions are presented: 1. Will a creditor's bill lie to subject a fund or chose in action of the debtor, without showing fraud or some other recognized ground of equitable jurisdiction? 2. Will it lie in favor of the plaintiff in this case without first having obtained judgment and issued execution? 3. Will it lie against the city? The remedy given judgment creditors in Missouri by the garnishment act, so superior to and ordinarily superseding equity proceedings, has made the first question with us a new one. Yet in other States, even in the absence of a statute authorizing it, courts of chancery lend their aid to enable such creditors to subject property and funds, including choses in action, to the satisfaction of the judgment, when they cannot be reached by execution, and when the execution cannot be otherwise satisfied. In the absence of fraud, trust, mistake or some other recognized source of · original chancery jurisdiction, these ancillary proceedings have not been looked upon favorably, but parties have been

referred to statutory remedies, and sometimes the relief has been altogether denied. A leading case is Hadden v. Spader, 20 Johns. 554, heard in the New York Court of Errors, before the adoption of the revised statutes making provision for petitions of this kind. Mr. Justice Woodworth pronounced the leading opinion, and held that funds and stocks belonging to the debtor and debts due him could be reached by an equity proceeding on behalf of the judgment creditor, notwithstanding they were not purchased, nor the debts created by means of property fraudulently withdrawn from the reach of the creditor. Justice Platt wishing to limit the extent of the jurisdiction to cases of fraud, Chief Justice Spencer expressly assented to the broader view of Woodworth, and it is presumed the affirmance of the judgment below was based upon that opinion. Afterwards, in Donovan v. Finn, 1 Hopkins Ch. 59, Sanford, Chancellor, gave an elaborate opinion, declining to be governed by the views of Woodworth and Spencer in Hadden v. Spader, and adopting that of Justice Platt. This discrepancy of views is supposed to have caused the revisors of 1828 to incorporate a provision in the revised statutes, giving the Court of Chancery the broad jurisdiction in aid of execution claimed for it in Hadden v. Spader. But without resorting to the statute, the views of Chancellor Sanford did not remain unquestioned; but in 1829, in Edmonston v. Hyde, 1 Paige, 637, the chancellor held that any species of equitable property of the debtor, including debts due him, might be reached to satisfy a judgment; and afterwards, in Tarbell v. Griggs, 3 Paige, 207, he remarks that "it has been frequently decided that this section of the revised statutes (the one above referred to) is not introductory of a new principle, but is only an affirmance of what was considered by the court of *dernier resort* the legitimate jurisdiction of the Court of Chancery previous to the adoption of the revised statutes." In Bigelow v. Congregational Society, 11 Verm. 283, Judge Williams refers approvingly to the general doctrine of Hadden v. Spader, and it is expressly adopted in Williams v. Hubbard, Watkins Ch. 28. In most of the States this subject is regulated by statute, and their decisions are hence without force with us.

The affirmation of the proposition that a judgment creditor, who has exhausted every ordinary means to satisfy his judgment, should have the aid of the court, in analogy to its ancient chancery jurisdiction, to reach his debtor's funds, whether fraudulently withdrawn or concealed or not, seems to be necessarily inferred from the main object of chancery jurisdiction — to furnish a remedy when the strict rules of legal practice fail. Creditors ordinarily invoke its aid to pursue the effects of their debtors that are fraudulently withdrawn from their reach. But a debtor may be a money-lender and be accumulating wealth, without having expressly withdrawn property from the reach of execution, and in the absence of our statutory remedies he might defy his creditors unless chancery could subject his credits. The chancellor, in Donovan v. Finn, admits that, under his view, the common law has furnished no relief in a case of this kind, and denies the maxim that "there is no wrong without a remedy."

Secondly, are there any circumstances that will authorize relief without a judgment? Scott v. McMillan, 1 Littell, 302, was a bill to set aside a fraudulent conveyance made by a debtor, and was filed before the indebtedness was reduced to judgment. The court held the ordinary rule to be that before a creditor could proceed in chancery to reach his debtor's property he must first establish his demand at law; but that, as in that case, when the debtor was absent from the country so that no judgment could be obtained, the creditor should be allowed, in the first instance to apply to equity for relief. This case is referred to and its doctrine affirmed in Kippen v. Glancy, 2 Blackf. 356.

Peay v. Morrison's Executors, 10 Gratt. 149, was "an attachment in equity to subject certain real and personal estate to the payment of the plaintiff's debts, for which no judgment had been recovered against Austin Peay." Morrison's executors were plaintiffs below, and Peay was a non-resident; and the court held that for that reason the court had jurisdiction to proceed with their equitable attachment, notwithstanding the claim against Peay, which was altogether a personal one, had not been reduced to judgment.

In Farrar v. Haselden, 9 Rich. Eq. 331, the Court of Appeals

in Equity of South Carolina recognizes as the practice of that State that where a debtor is absent, leaving property, equity will grant the creditor relief against the property, although "he may have taken no steps to recover or establish his demand at law, because the law afforded no process by which he could make his debtor a party in court."

In Greenway v. Thomas, 14 Ill. 272, the court dismissed a creditor's bill because the plaintiff had a legal remedy by attachment, but admitted his right to relief without judgment when the debtor has absconded, if there is no remedy, and for want of such remedy.

Pope v. Solomon, 36 Ga. 541, was a creditor's bill against an absconding debtor, and was sustained, although no judgment had been obtained, because the court did not think, under the circumstances of that case, that the remedy by garnishment "would have been as complete and effectual as in a court of equity."

It seems thus to be satisfactorily settled upon authority that when the debtor has absconded, so that no personal judgment can be obtained against him, and there is no statutory proceeding by which his property can be reached, a creditor's bill will lie in the first instance, and from the necessity of the case. It is analogous to a proceeding to subject the equities of a deceased debtor, or to satisfy a debt from a specific equitable fund, as to enforce a lien, in neither of which cases is a personal judgment required. (O'Brien v. Coulter, 2 Blackf. 421; Russell v. Clark's Heirs, 7 Cranch, 89.)

In most of the cases above cited, fraudulent practices were charged upon the debtor, as they are in a general way in the case at bar; but I have chosen to consider the question as divested of that element further than it adheres to all cases where a debtor possesses a fund from which he can satisfy his creditors, but absconds without having done so. This is in itself fraudulent, in a sense, although no conveyances may be made or other contrivances resorted to with design to cheat and defraud. (Heath v. Page, 63 Penn. St. 124.)

But, thirdly, the more difficult question arises whether the city can be subjected to this proceeding. Our garnishment act (§ 3)

exempts municipal corporations from its operation, and it is claimed that, upon the principle that equity follows the law, they should also be exempt from creditors' bills or garnishments in equity. Municipal corporations, in this regard, are classed with sheriffs, tax-collectors, administrators, etc., who hold as trustees, and would be exempt without the statute. So it had been held, before this enactment, that towns and cities could not be garnished for a sum due an officer as part of his salary. (Fortune v. St. Louis, 21 Mo. 239; Hawthorn v. St. Louis, 11 Mo. 59.) Public policy forbids creditors from thus stepping in between the city and its public servants; and the statute, in seeking to prevent any future attempt in that direction, went much further, and included all kinds of liabilities, so that a debtor's funds, if in the hands of a municipal corporation, are placed beyond the reach of his creditors by statutory garnishment. There is no reason why a city, for an ordinary liability unconnected with its present public service, or the prosecution of its public works, should not, like private corporations, be held to answer a garnishment process. But the prohibition is general, and creditors like the present plaintiff are deprived of the usual remedy against their absconding debtors, if the latter have been sharp enough to place their funds in the city treasury. Upon what principle should this fact also deprive them of the equitable remedy they would possess if the garnishment process were unknown to the law? So far from that, it is the foundation of their right to relief. The maxim that equity follows the law has no such application; otherwise, in most cases where legal remedies fail, equitable relief would be cut off. The court, in analogy to the former relief in chancery, would disregard the letter of the statute forbidding garnishment, but would conform to its spirit and refuse to interfere when the reason for the prohibition existed. Perhaps the object of the prohibition was to leave the matter to another forum — to one whose remedies are more flexible than ordinary judgments — so that, whatever the relief, it may be consistent with public policy, and may be given in view of the debtor's relation to the city.

To deny the relief sought would permit the debtor to withdraw

property from the State which equitably belongs to his creditors. It is the policy of all States to protect home creditors, and in pursuance of this policy, and in absence of any other remedy, I think this proceeding should be sustained. The judgment will be reversed and the cause remanded. The other judges concur.