PHILIP HASTON and others

*v.*

MICHAEL CASTNER and others.

1. A creditor's bill to set aside fraudulent conveyances may be filed by the creditors of a deceased debtor, who have exhausted their remedy at law against his estate, although they have not obtained judgments on their several claims.

2. Conveyances by a solvent father to his two sons, in consideration of services rendered by them for many years, made openly, the deeds being recorded soon afterwards, and the sons remaining in continuous possession thereafter, are good against creditors.

Creditors' bill. On final hearing on pleadings and proofs.

*Mr. John T. Bird* and *Mr. G. A. Allen,* for complainants.

*Mr. O. Jeffery* and *Mr. J. G. Shipman,* for defendants.

THE CHANCELLOR.

This suit is brought by several simple contract creditors of Moore Castner, deceased, late of the county of Hunterdon, against his sons Michael and Nathan, for the purpose of charging two farms in that county, which he conveyed to Michael and Nathan respectively, in 1865, by deeds dated on the 1st day of May in that year, though they were not recorded until the 16th of May, in the year 1867, with

so much of the debts of those creditors as have not been paid of the estate of Moore Castner of which he died seized and possessed. His estate has, it is alleged, been settled up, and it paid about fifty per cent. only of his indebtedness, leaving out of the account $1,057 of the proceeds of the sale of his real estate invested for the benefit of his widow to secure to her an equivalent for her dower in that property; which sum, at her death, will be distributed among the creditors.

The ground on which the complainants seek to charge the property conveyed to Michael and Nathan with the indebtedness of their father is, that the conveyances of the farms were made and intended to be in fraud of the creditors of Moore Castner.

The defendants insist that the complainants, being merely simple contract creditors, without judgment, have no standing in this court which will enable them to maintain this suit. The case, however, is exceptional. This court should not refuse its aid to the creditors of a deceased debtor to reach the property which he may have fraudulently endeavored to place beyond their reach, and which appears to be necessary for the satisfaction of their just claims against him, merely because they have not, in his life-time, established their debts by obtaining judgment thereon against him. If they have exhausted their remedy at law against the estate of which he died seized and possessed, this court should be open to them to enable them to reach, if necessary for the satisfaction of their debts, any property which, in fraud of their rights, he may have placed in the hands of others. *Loomis* v. *Tift*, 16 *Barb.* 541; *Phelps* v. *Clapp*, 50 *Barb.* 430; *Richards* v. *Smallwood*, 1 *Jac.* 552.

In the case in hand, the creditors of Moore Castner, whose debts existed at the time when the deeds to Michael and Nathan were put upon record, continued to give credit to him up to the time of his death, which took place on the 10th of August, 1872, a period of more than five years. During almost all that time he was a man of business, act-

ively engaged as such in the same neighborhood in which he lived when he made the conveyances, which is the same locality in which the farms are situated. They had constructive notice, at least, from the records, of the existence of the conveyances. Michael and Nathan, from the time when the conveyances were made in 1865, claimed to be the owners of the property, and dealt with it accordingly. Each of them was in the actual possession of the property conveyed to him. Those creditors continued to give credit to Moore Castner, notwithstanding the fact that he had conveyed the farms to Michael and Nathan. If the conveyances were not fraudulent, they should be held to have acquiesced in them.

That the conveyances were not fraudulent abundantly appears. If it be conceded that they were wholly voluntary, as they appear not to have been in fact, they were made openly, and not only with no attempt whatever at concealment, but with no occasion for concealment. Moore Castner deliberately and openly employed a surveyor of the neighborhood to survey the farms, expressly with a view to making the conveyances in question. The surveys were made accordingly, in November, 1864, and the surveyor, who was a scrivener also, was employed by him to draw the deeds. They were not executed until the 1st of May following. The surveyor swears that Moore Castner told him that he intended to give the property to Michael and Nathan, and he says that he told him to draw the deeds accordingly. Moore Castner's daughter, Lydia Pidgeon, testifies that on one occasion her father, who then had the deeds in his hands (they appear not to have been then delivered), said to her, speaking of his property and referring to the deeds, that they were for the boys; that the boys had worked very hard, Michael especially; that he was going to repay them, and that there was enough left for the rest of his children, for he paid taxes upon $11,000. William Cravatt testifies that Moore Castner said in his presence and hearing that he was going to give the boys deeds for the farms, and he says Castner afterwards

told him he had done so. Thomas Banghart testifies that he heard Moore Castner say that Michael had been a very good boy for him, and that he intended that he should have the farm on which he lived, and he adds that he said, further, that he had given the farm to Michael. Daniel S. Castner testifies that Moore Castner told him, that "he intended that Michael should have the farm (the one which he conveyed to Michael), for he had given or was going to give him a note for the amount of $1,000 or $1,500, for his hard labor, and he did not intend that Michael should be cheated out of his hard labor after he was gone, and he would, he thought, soon exchange, take up the notes or note, and intended to change for the farm, so that after he was gone Michael should not be bothered, for he thought he had earned it, or ought to have it." Thomas Anderson swears that Moore Castner told him that he was going to deed the farm where Michael lives (the one which his father conveyed to him) to Michael, for $500; that Michael had always been with him and stuck to him, and he was going to sell him the farm low on that account. He says that Moore Castner also said that he was going to give his son Nathan a deed for the other farm, the farm adjoining; and that he had always intended to give the third farm to his son Benjamin, but that he had made a disturbance and left him, and that he should not give him anything.

It is very manifest, from this testimony, that Moore Castner made no attempt to conceal the fact that he had conveyed, or intended to convey, the farms to Michael and Nathan. Nor was there any occasion for concealment. His debts, at the time when the deeds were executed, did not exceed $2,500, and when the deeds were recorded, they did not exceed $5,500, and he had a mortgage which he had received from George Banghart, on account of the purchase-money of the third farm above mentioned, of $3,000; also a mortgage given to him by Henry Major, of $1,600; a mortgage of about $2,000 given to him by Jacob Bryan; a mortgage given to him by Martin Lunger for $816; a mort-

gage of one Swick; a mortgage of $300 given to him by Henry Teats, and two notes on which Major was security for $200—all of which were good and collectible. He had, besides, real estate worth more than $3,000, and a stock of goods in his store worth $1,000, besides other valuable property.

It appears, that so far from being insolvent, he had credit with which to aid others as their surety. Neither he nor those who did business with him regarded his pecuniary condition as even doubtful. He had, in fact, more than twice as much available property as would pay his debts. It appears, also, that in the year 1866, he was assessed for property of the value of $8,000 or $9,000. He seems to have had good bonds and mortgages, and notes enough to pay all his debts, both when the deeds were made and when they were recorded.

If he was entirely solvent when he made the conveyances to Michael and Nathan; if he had available assets sufficient to answer all his pecuniary obligations over and above the property conveyed to them, the conveyances are valid against then existing creditors, even though the convey-ances were wholly voluntary. I, therefore, do not deem it necessary to enter at length into the consideration of the question as to whether the conveyances were without other consideration than natural affection. It appears that the grantor gave to Michael his note for $1,000, dated April 1st, 1859, "for," according to the declaration of the note itself, "value received of him for labor done since he was twenty-one." At the date of that note Michael was about thirty years old. The note appears to have represented about nine years' labor by Michael, for his father, after he attained his majority. He swears, too, that it was agreed between him and his father, that he should cancel the note for $1,000, and pay the latter $500, the consideration expressed in the deed to him, and that he in fact paid it accordingly. Nathan, too, swears that he agreed to pay his father the con-sideration ($500) mentioned in his deed, and that he paid $400

of the amount, and his father released him from the pay-
ment of the balance in consideration of two years' labor
performed by him for the latter. The statement in the
answer, that part of the consideration of the conveyance to
Nathan was a note of $700, seems to have been a mistake.
It does not appear to have been an intentional misstatement
on the part of the defendants.

The bill alleges that Moore Castner, and his sons Michael
and Nathan, fraudulently, and to defeat the creditors of the
father, shortly before his death cancelled valid claims in his
favor against the two sons. The evidence does not sustain
the claim. It appears that for a considerable time before
his death, it was understood between Moore Castner and
Michael and Nathan, that their respective demands against
him should be regarded as satisfied by his demands against
them respectively. There appears to have been a fair settle-
ment and understanding between the parties accordingly,
and Moore Castner made an entry in his book of accounts,
under date of January 22d, 1872, and another under date
of July 16th, 1872, declaring the settlement and discharge
of all demands on his part against Michael and Nathan.
There is no evidence of fraud in the transaction. The first
entry is dated ten days before the date of Moore Castner's
will, and the settlement of the accounts between him and
Michael and Nathan probably arose from his desire to extin-
guish thereby all demands on their part against his estate.

The bill will be dismissed, with costs.