Florence Buckley, Appellant, v. Gladys Maupin, Administratrix of the Estate of A. N. Welborn, Ella M. Jordan, J. F. Jordan, her husband, Gladys J. Maupin, L. V. Maupin, her husband, C. A. Gregory, Trustee, and G. W. Gregory, Trustee.—125 S. W. (2d) 820.

Division One, March 8, 1939.

*T. C. Owen* and *Russell Garnett* for plaintiff.

*Musser & Musser, Chas. K. Hackler* and *M. D. Abner* for defendants.

FERGUSON, C.—This is a suit in equity, in the nature of a creditor's bill, to set aside certain alleged fraudulent conveyances of land, situate in Johnson County, and subject said land to the payment of an alleged indebtedness, of the original grantor, to the plaintiff herein. Defendants' demurrer to the petition was sustained. Plaintiff "declined and refused" to plead further whereupon judgment was entered dismissing the petition and plaintiff has appealed. The defendants are Gladys Maupin, administratrix of the estate of A. N. Welborn, deceased, Ella M. Jordan, a daughter of Welborn, her husband, J. F. Jordan, Gladys J. Maupin, also a daughter of Welborn, her husband L. V. Maupin, C. A. Gregory, trustee (in a deed of trust), and G. W. Gregory, trustee (in another deed of trust). The cause was tried in the Circuit Court of Johnson County.

The petition is lengthy but we shall endeavor to give the substance of the pertinent allegations. We state the facts as they are alleged in the petition. A. N. Welborn, a resident of Johnson County, died, intestate, "leaving no widow," November 26, 1933. A daughter, Gladys Maupin "was lawfully appointed administratrix," of Wel-

born's estate, by the Probate Court of Johnson County and was at the time this suit was filed "the lawfully appointed administratrix of said estate." At all times mentioned plaintiff was a resident of Johnson County "and engaged with her husband in agricultural pursuits." In February, 1927, Welborn "requested and contracted with plaintiff to furnish him room and board and do his washing and to render such other services as necessary and required, from time to time by him for his comfort and convenience as such boarder . . . and agreed to pay the plaintiff reasonable compensation" therefor, to which "plaintiff consented and agreed," and "pursuant to said arrangement" Welborn "resided with the plaintiff and occupied a room and was furnished his board, washing, laundry and such other services necessary to make him comfortable from, and after said time, until the 10th day of January, 1933." From the "latter part of December, 1931 . . . until January 10, 1933, Welborn was ill" and in addition to the aforesaid services rendered by plaintiff she "cared for and nursed Welborn in his sickness." It is alleged that the reasonable value of all the services so rendered Welborn is $1450. On April 20, 1931, Welborn married and "brought his wife to plaintiff's home." The petition then alleges that Welborn became indebted to plaintiff in the additional sum of $100 "for board, lodging," etc., for his wife from April 20, 1931, to June, 1931, and that Welborn became indebted to plaintiff in the aggregate amount of $1550 which, less credits later set out, " is now a lawful and just demand against his estate." Plaintiff says Welborn's estate is entitled to credits "against her claim" aggregating $240, being "forty dollars for provisions furnished her by Welborn" and $200 "upon a promissory note which she executed to . . . Welborn," "leaving a balance due plaintiff from the said Welborn, and constituting a lawful demand against his estate," in the sum of $1310, "with interest thereon . . . from January 10, 1933 . . . the date . . . she made demand on the said Welborn for payment of her claim." It is then alleged that "the validity of her claim is undisputed by defendants, or any one else." As to the alleged fraudulent conveyances of land the petition alleges; that "at the time of the employment of the plaintiff . . . and during that time" Welborn "was possessed of very little money and means, save and except that he was the owner "of a tract of 180 acres of land in Johnson County; that "shortly before his death . . . the said Welborn . . . intending to avoid the payment of said indebtedness to the plaintiff, and in fraud of his creditors, especially plaintiff, on the 16th day of January, 1933," (Welborn died Nov. 26, 1933) "conspired and contrived with the defendant Ella M. Jordan" (his daughter) "to put all of his property and effects out of the reach of his creditors . . . and pursuant to, and in furtherance of said fraudulent scheme, he executed a deed conveying all of his

real estate . . . to the said Ella M. Jordan . . . without any valuable consideration for said conveyance;'' that said deed conveyed 180 acres of land, which is described, all in Johnson County, subject to two deeds of trust securing an aggregate sum of $1100; that the deed was recorded on January 17, 1933; that ''said deed was fraudulent and void as to Welborn's creditors and especially this plaintiff, and was made for the sole purpose of avoiding the payment of his just debts and obligations;'' that on November 20, 1935 (approximately two years after Welborn's death) defendants ''Ella M. Jordan and her husband J. F. Jordan . . . still contriving and conspiring to carry out said fraudulent scheme with defendant Gladys J. Maupin (daugther of Welborn) and L. V. Maupin, her husband, . . . to put said property further beyond the reach of Welborn's creditors'' conveyed forty acres of the land, without any consideration therefor, to three named persons, not made defendants herein; who, ''immediately'' and on the same date, conveyed the said forty acres of land, without any consideration therefor, to the defendants Gladys J. Maupin and L. V. Maupin; that both deeds were recorded, though the date thereof is not stated; that on the same date, November 20, 1935, the Jordans ''in furtherance of said fraudulent scheme'' and ''still contriving and conniving with'' the Maupins conveyed another forty acres of the land to the Maupins, without any consideration therefor; that thereafter, the date is not stated, the Jordans ''still contriving and scheming to defraud the creditors of the said Welborn'' executed and delivered a deed of trust against the 100 acres of land, title to which remained in Ella M. Jordan, to G. W. Gregory, trustee for C. A. Gregory, ''which said deed of trust pretended . . . to secure a note for the sum of $1200,'' but ''that the said Gregorys, and each of them well knew at the time that the said Ella M. Jordan's title to said land was fraudulent and void,'' etc.; and that the Maupins executed and delivered a deed of trust against the 80 acres of the land, title to which was in their names, to C. A. Gregory, trustee for G. W. Gregory and Nancy E. Gregory, ''purporting'' to secure notes aggregating $3200 but that all the Gregorys, parties thereto, ''at the time'' knew that ''the title of the Maupins . . . was fraudulent.'' Nancy E. Gregory is not made a party defendant nor is either G. W. Gregory or C. A. Gregory made a party defendant in an individual capacity. The bill or petition then alleges; that ''Welborn left no personal property or effects at the time of his death and the only assets of his estate consist of the real estate mentioned;'' that if the conveyance from Welborn to his daughter Ella M. Jordan be ''permitted to stand . . . the estate of the said Welborn . . . will be absolutely insolvent;'' that ''plaintiff cannot proceed lawfully in a court of law by attachment or garnishment of said assets rightfully belonging to the estate . . . and a suit at law to reduce her claim to judgment would be a futile and useless

act;" that "she. has no adequate remedy at law, and that to recover a judgment at law would be a useless and vain procedure . . . and in the end a court of law would be unable to enforce its judgment."

The prayer asks relief in six respects; (1) that the court declare the deed from Welborn to Ella M. Jordan conveying the 180 acres of land "to be fraudulent and void as against plaintiff and the creditors of A. N. Welborn, deceased, and that the same be set aside . . . and the title of the land described in said deed now remaining in the said Ella M. Jordan be divested out of the said Ella M. Jordan and vested in the heirs of A. N. Welborn, deceased, subject to the payment of his debts;" (2) that the Jordans' deed to three named grantees, for forty acres of the land, "be declared fraudulent and void;" (3) that the deed from said three grantees conveying said forty acres of the land to the Maupins "be declared void" and title to that forty acres be "divested out of" the Maupins "and vested in the heirs" of Welborn "subject to the payment of his debts;" (4) that the deed from the Jordans conveying another forty acres of the land to the Maupins be declared void and the title to that land vested in the heirs of Welborn, etc.; (5) that the court "render judgment in favor of the plaintiff and against the administratrix of the estate" of Welborn in the sum of $1310, with interest, and that the administratrix be required "to sell all of said real estate or so much thereof as will be required to pay and satisfy plaintiff's said judgment; (6) that the Gregory deeds of trust be declared "fraudulent and void as against plaintiff or inferior to her demand against the estate."

Defendants demurred to the petition on the following grounds: (1) that there is a misjoinder of parties defendant;. (2) that several causes of action have been united in one count; (3) that the petition does not state facts sufficient to constitute a cause of action in equity; and (4) that several causes of action have been improperly united. It readily appears that if the third ground of demurrer, that is, that the petition does not state facts sufficient to constitute a cause of action in equity, be sustained the judgment of the trial court should be affirmed and a determination of the other grounds of. the demurrer would be unnecessary.

Plaintiff claims, by virtue of the contract alleged, to be a general creditor, in an unliquidated amount, of the deceased Welborn. Though her claim is purely a legal demand she has not established it at law, but alleges, that it ".is undisputed by defendants, or anyone else," that the Welborn estate is insolvent, and that it would be useless to recover a judgment at law because "in the end a court of law would be unable to enforce its judgment," and contends that, therefore, she may properly resort, in the first instance, to a court of equity, and there have her claim adjudicated and, if thereupon her claim is sustained and she found to be a creditor of the deceased in a liquidated

amount, have the collection of the debt so adjudged enforced by a decree setting aside the alleged fraudulent conveyances and subjecting the land to the payment thereof.

The general rule is that before a creditor can maintain a suit in equity, in the nature of a creditor's bill, to set aside a conveyance as being in fraud of creditors, he must first exhaust his remedies at law. [27 C. J., p. 726; 12 R. C. L. 636; 14 Am. Jur. 691.] "Before resorting to chancery (a creditor) must first exhaust his legal remedies, whatever they may be." [Merry v. Fremon, 44 Mo. 518; Turner v. Adams, 46 Mo. 95; Mullen v. Hewitt, 103 Mo. 639, 15 S. W. 924; Atlas National Bank v. Moran Packing Co., 138 Mo. 59, 39 S. W. 71; Coleman v. Hagey, 252 Mo. 102, 158 S. W. 829; Woolfolk v. Kemper, 31 Mo. App. 421.] "This is usually evidenced by a judgment, the issuance of an execution and a return of *nulla bona*. But the cases hold that, where it is shown that the judgment debtor was insolvent, and that the issue of an execution would necessarily be of no practical utility, its issue might be dispensed with." [Turner v. Adams, 46 Mo. 95, 99; Paddock-Hawley Iron Co. v. McDonald, 61 Mo. App. 559; Merry v. Fremon, supra; 27 C. J., p. 744.]

. Though on a proper showing, that an execution on a judgment would be futile and fruitless, the issuance of an execution may be dispensed with as a prerequisite to the maintenance of a suit in equity by a judgment creditor to have property which the judgment debtor has fraudulently conveyed subject to the payment of the judgment, it is only under exceptional circumstances, later discussed, that a general creditor, in an unliquidated amount, with a purely legal demand, and without any legal or equitable lien on the property, will be permitted to maintain a suit in equity to set aside a fraudulent conveyance without first reducing his claim to a judgment. The general rule, therefore, is that "only judgment creditors and those who have a legal or equitable lien on the property, and under the statutes of this State creditors who have commenced attachment suits against the property, can maintain an action to set aside a fraudulent conveyance, and they can do so only when they allege and prove that they have no adequate remedy at law." [Coleman v. Hagey, 252 Mo. 102, 126, 158 S. W. 829, 836; Daggs v. McDermott, 327 Mo. 73, 34 S. W. (2d) 46, and cases there cited.] There is no claim of either a legal or equitable lien in the instant case nor is attachment involved. In such a situation it is elementary that the creditor must establish his claim at law before he can have relief against his debtor in equity. [12 R. C. L. 626.] But plaintiff herein claims the right to invoke the jurisdiction of a court of equity without first having established her claim at law.

The decisions point out vital and important reasons why a general claimant, not having either a legal or equitable lien on the property, and whose demand is purely legal, should, as a condition precedent to the maintenance of a suit in equity, in the nature of a

creditors' bill, be required to reduce his claim to a judgment or establish it at law and in addition thereto make a showing that he has no adequate means at law to enforce his judgment, that is, that final process in law is inadequate. ''The real basis of the rule is . . . that the debtor has the right to have the issue of indebtedness determined by a jury.'' [23 L. R. A. (N. S.), p. 11; 27 C. J. 729; Kent v. Curtis, 4 Mo. App. 121; C. Bewes, Inc., v. Buster, 341 Mo. 578, 108 S. W. (2d) 66.] A court of equity is not the proper tribunal to ascertain what is due from one to another on a demand purely legal. It has no jurisdiction of the mere question whether A owes B or not. The alleged debtor has a right to a trial by jury, at law, on the alleged liability and the validity and measure of claimant's demands. To permit the claimant to maintain a bill in equity to enforce such a claim, without requiring it to be first reduced to a judgment at law, would be to deprive the debtor of a trial by jury upon a question where, by the rules of the common law, he would be entitled to such a trial. [Detroit Copper & Brass Mills v. Ledwidge, 162 Ill. 305, 44 N. E. 751.] In discussing the necessity that such a claim be first established at law the leading opinion in Kent v. Curtis, 4 Mo. App. 121, 124, says: ''Unless the claim is reduced to a judgment, equity assumes at the outset, without any ground of equity jurisdiction, to ascertain and adjust a merely legal claim. It is no answer to say that the debtor is insolvent. That does not touch the question. Insolvency may be a good excuse for not issuing execution, for that might be a useless act. But to obtain a judgment at law would not be useless. It would settle the legal right; would ascertain the fact, with the ascertainment of which equity has nothing to do. It would secure the right of trial by jury in cases not of equity jurisdiction. It would prevent courts of equity from becoming the forum for the trial of suits for unliquidated damages and of actions for tort; for if the jurisdiction of equity is not to depend on the nature of the demand, or on the question whether legal remedies have first been exhausted, why, in any case where the final process at law is inadequate to subject property to the payment of debts, may not a creditor with a claim for damages, however arising, sue first in chancery?''

Further, only a creditor, who has no adequate remedy at law whereby he can enforce the collection of the debt, may maintain a suit, of this kind, in equity. By reducing his claim to a judgment at law the claimant establishes himself as a subsisting creditor entitled, upon a proper showing, to invoke the aid of a court of equity. [27 C. J. 729.] ''A mere creditor who has not a judgment, and who may never obtain a judgment, has not the right to ask equitable interposition of this kind.'' [Turner v. Adams, 46 Mo. 95, 99.] ''The creditor must first establish his claim at law; his claim is not certain, and he, therefore, cannot be heard to charge fraud on his debtor until it is first ascertained that he is a creditor.'' [Crim v. Walker, 79

Mo. 335.] "A court of equity can only interfere with the general and inherent right of the debtor to dispose of his property at the instigation of *bona fide* creditors, and that it cannot be asserted with certainty that anyone is an actual and subsisting creditor, until a judgment has been obtained on his claim." [Kankakee Woolen Mills Co. v. Kampe, 38 Mo. App. 229, 234; Coleman v. Hagey, 252 Mo. 102, 127, 158 S. W. 829; C. Bewes, Inc., v. Buster, 341 Mo. 578, 585, 108 S. W. (2d) 66, 69.]

We are referred to the statement found in some texts, together with the cases cited in support thereof, to the effect that, "Equitable relief will generally be granted without a judgment when such judgment is impossible of attainment, or obviously unavailing if obtained." [12 R. C. L., p. 630.] But the text, at the same citation, continues: "There is a distinction made in some cases, however, as to necessity of judgment, between the impossibility of obtaining judgment and the uselessness of it, the courts holding that equitable aid may be afforded a general creditor where it would be impossible for him to obtain judgment, but that it would not be extended to him where his only excuse for not having obtained judgment is that it would be useless." The impossibility of attaining a judgment is very generally recognized as an exception to the general rule that a creditor at large must first reduce his claim to a judgment before he can invoke the aid of equity to enforce it. [23 L. R. A. (N. S.) 85; 14 Am. Jur., p. 697, sec. 38, p. 698, sec. 39; Wait, Fraudulent Conveyances and Creditor's Bills (3 Ed.), p. 168; Pendleton v. Perkins, 49 Mo. 565; Adler Goldman Comm. Co. v. Williams, 211 Fed. 530, 533; Overmire v. Haworth, 48 Minn, 372, 51 N. W. 121; First National Bank of Riverside v. Eastman, 144 Cal. 487, 77 Pac. 1043.] As illustrating the impossibility of obtaining a judgment at law against the alleged debtor, we refer briefly to two of the foregoing citations. "The weight of authority supports the view that non-residence or absence of the debtor, as where he is a fugitive from justice, obviates the necessity of a prior judgment at law . . . where such non-residence or absence renders it impossible or impracticable to obtain such a judgment and there is no adequate remedy by which the debtors property can be reached." [14 Am. Jur., p. 697.] In Pendleton v. Perkins, supra, this court held, "that when a debtor has absconded, so that no personal judgment can be obtained against him, and there is no statutory proceeding by which his property can be reached, a creditor's bill will lie in the first instance, and from the necessity of the case." The proposition that the creditor should not be required to first obtain a judgment at law before resorting, by a creditor's bill, to equity if a judgment would be "unavailing" or, as is sometimes said, "useless" is on the theory that if the alleged debtor is insolvent, so that final process at law on the judgment would be unavailing, and that is alleged and shown, the creditor is entitled to go into equity in

the first instance without first having established his claim, at law. Three decisions in this State are cited as supporting such theory: Luthy v. Woods, 1 Mo. App. 167; Davidson v. Dockery, 179. Mo. 687, 78 S. W. 624; Hume v. Wright (Mo.), 274 S. W. 741. The first case, Luthy v. Woods, seems to announce such a rule, however we do not find that it has been followed except, it is interesting to note, that on a second appeal in the case the writer of the opinion observed: ''The question as to the right of the plaintiff in this case to sue in equity without having first obtained a judgment at law was passed upon in'' the former appeal. ''The plaintiff has proceeded upon the faith of that decision, and it should not be disturbed, in any event, as against him. . . . In my view, as there was here no original ground of equity jurisdiction, the plaintiff should have obtained a judgment at law.'' Further it appears that in the first appeal the holding was based largely on the cases holding that where it is shown that the judgment creditor is insolvent the issue of an execution might be dispensed with as a prerequisite to the suit in equity. Davidson v. Dockery, supra, was a suit in equity ''to remove an alleged cloud on the title'' to land. In the course of the opinion a general statement is made to the effect that a creditor at large may go into equity in the first instance, without having obtained a judgment, where he alleges and shows that he ''has no adequate remedy at law, as for instance, where the defendant is wholly insolvent and a judgment at law would be fruitless.'' The remaining case, Hume v. Wright, supra, lends no support whatever to such theory but to the contrary holds, that in a suit by a creditor to set aside a conveyance as fraudulent, where he had neither reduced his claim to judgment, attached property nor obtained a lien upon it, the mere allegation that defendant was wholly insolvent and without property to pay the alleged debt, and therefore had no remedy at law, was insufficient to invoke the aid of equity. We have hereinbefore noted some of the reasons for the rule that the claim be first established at law, and it follows therefrom that, while insolvency may excuse the issuance of an execution as being a useless act it cannot be said that to obtain a judgment at law is useless and unavailing for the judgment avails to settle and adjudicate a legal right, establish claimant as a creditor and the measure of the debtor's liability, with which equity has nothing to do, and secures the right of trial by jury in cases not of equity jurisdiction. If one claiming to be a mere general creditor, in an unliquidated amount, whose claim grows out of contract and is a purely legal demand, be permitted to invoke the interposition of a court of equity, by means of a creditor's bill, without first having established his claim at law and himself as a subsisting creditor, upon the mere allegation that the alleged debtor is wholly insolvent and therefore an execution upon a judgment at law would be fruitless and unavailing, does it not logically follow that one asserting a claim, in tort,

for damages for personal injuries, allegedly caused by the negligence of another, would likewise be entitled to invoke the jurisdiction of a court of equity, by a creditor's bill, without having first reduced his claim to judgment, upon the mere allegation that the alleged tort feasor is wholly insolvent and a judgment at law against him would, for that reason, be "unavailing" or "useless?" We are inclined to the opinion that mere insolvency should not be held to excuse the establishment of the claim at law and that the terms "unavailing," "useless" and "futile" are more aptly and correctly applied to the pursuit of final process at law where the judgment debtor is wholly insolvent than to the obtaining of a judgment. Such is what, we believe it will be found, is really meant by the vast majority of the cases where such terms are used in discussing the prerequisites to the maintenance of such suits in equity. [14 Am. Jur., pp. 699, 700, sec. 41, p. 695, sec. 31; 23 L. R. A. (N. S.), p. 88.]

In the instant case no action was taken by plaintiff during the lifetime of the alleged debtor to establish her claim at law and this suit in equity was commenced after death of the alleged debtor. The administratrix of the estate and the alleged fraudulent grantees of the real estate are made parties defendants and plaintiff attempts to proceed in equity without first having established her claim against the estate at law. The reasons, heretofore mentioned, for the requirements that the claimant in a suit of this nature must first establish his claim, and exhaust his remedies, at law do not fail, and are none the less potent, because of the death of the alleged debtor. The claimant's legal remedy is as ample against the estate of the deceased in the hands of the personal representative as it was against the alleged debtor in his lifetime. Therefore the claimant, before he can assert the right to proceed in equity as a subsisting creditor must first establish his claim or demand against the estate in one of the modes prescribed by law, that is, either by obtaining a judgment on his claim in an action against the administrator, in a court of record, and exhibiting the judgment for classification in the probate court, or obtaining the allowance of his claim or demand against the estate upon a presentation and hearing in the probate court. Either course permits a determination and adjudication at law of a purely legal claim, and the legal representative may make any defense which the alleged debtor could have interposed and have it determined upon a trial by jury. Since the law will not permit a creditor of an estate, on recovering judgment against the administrator, or on having his claim allowed in probate court, to sue out an execution thereon, a showing that he has thus established his claim at law, and is therefore a subsisting creditor, and that the estate is insolvent, will be regarded as an exhaustion of the legal remedies and entitle him to equitable aid to enforce collection of the adjudicated debt against property which has been fraudulently conveyed. [White v. Russell, 79 Ill. 155;

Estes v. Wilcox, 67 N. Y. 264; Williamson v. Furbush, 31 Ark. 539; Chambers v. Sallie, 29 Ark. 407; Ohm v. Superior Court, 85 Cal. 545, 26 Pac. 244; Mesmer v. Jenkins, 61 Cal. 151; Scripps v. King, 103 Ill. 469; Houston v. Maddux, 53 N. E. 599; Mugge v. Ewing, 54 Ill. 236; O'Connor v. Boylan, 49 Mich. 209, 13 N. W. 519; Haston v. Castner, 29 N. J. Eq. 536; White v. Croker, 13 Fed. (2d) .321, 273 U. S. 715; Anderson v. Avery, 6 Ky. L. Rep. 363; 23 L. R. A. (N. S.), pp. 92, 97; 12 R. C. L., p. 630; 27 C. J., p. 732.] The allowance, by the probate court, of a claim against a decedent's estate is the equivalent of a judgment for the purpose of maintaining a creditor's bill. [14 Am. Jur., sec. 32, p. 695; 2 Moore on Fraudulent Conveyances, sec. 41, p. 789, and cases cited, supra.]

We find two Missouri cases which are somewhat analogous, Woolfolk v. Kemper, 31 Mo. App. 421, and Lazonby v. Smithey, 151 Mo. App. 285, 292, 131 S. W. 708, 710. While neither case involves a fraudulent conveyance of property, the cases serve to illustrate the necessity of first exhausting legal remedies and establishing a claim at law before proceeding to enforce collection thereof by equitable means. In Woolfolk v. Kemper, supra, Woolfolk sold a brood mare to Kemper, who paid part of the purchase price and executed a note for the remaining portion thereof. Kemper died, leaving the note unpaid. His widow applied to the probate court for an order that no letters of administration be granted as the estate did not exceed in value the sum allowed her, as the widow, by law. Such order was made and it was directed that the property be turned over to her, including the mare sold by Woolfolk to her deceased husband. Woolfolk filed a bill in equity setting up the foregoing facts and asking that he be declared to have a lien on the mare and that it be enforced. A demurrer to the bill was sustained in the circuit court. Woolfolk relied upon the statute providing that personal property shall be subject to execution on a judgment against the purchaser for the purchase price thereof. The Court of Appeals said: ''There is no direct lien created by this statute, though it may be considered in some cases, as in the nature of a lien. The only mode for subjecting the property for the purchase price is to obtain a judgment therefor. By this we do not mean to say that there is no relief in equity for a party in the condition plaintiff is, but we say that he has not yet placed himself in position to call into requisition the assistance of a chancery court. Under the very terms of the statute he should have a judgment in order to subject property to the purchase price; but aside from this, it is a principle of equity that before it will lend its aid, the party seeking it, must have gone as far as may be with his legal remedy.'' The opinion then points out that though the widow has obtained an order of the probate court dispensing with administration and turning the property over to her ''yet such proceeding is not binding on plaintiff and does not prevent him, upon a proper

showing as a creditor," from having administration on the estate. The opinion then continues: "This he should do, and then proceed to have his claim allowed. We are of the opinion that after having pursued this course, as his legal remedies will have been exhausted, so far as obtaining the benefit of said section is concerned, he could then ask the aid of a court of equity, by setting up the facts of his case as they would then be, to subject such property to the payment of the purchase price." The Lazonby case, supra, follows Woolfolk v. Kemper, upon a similar state of facts.

Plaintiff relies upon an observation made in Farmers and Traders Bank v. Kendrick, 341 Mo. 571, 108 S. W. (2d) 62. Reference was there made to various exceptions which, in some instances, had been allowed to the general rule that a prior judgment at law must be obtained before resort could be had to equity to set aside a fraudulent conveyance and it is said that one exception which has been recognized is, that "a general creditor of a decedent without first having obtained a judgment at law, either against the debtor in his lifetime or against his estate as a demand, may proceed to set aside in equity a fraudulent conveyance," citing the note at 103 A. L. R. 555. We note here that the maintenance of the suit in equity in Farmers & Traders Bank v. Kendrick, was not permitted on that ground. We understand the purport of the holding in that case to be, that if the estate is insolvent and the validity and amount of the claim is admitted or acknowledged, as it was in that case, then the creditor may proceed in equity to set aside a fraudulent conveyance without first having established his claim against the estate at law. We later discuss an admission of the claim as excusing its prior establishment at law. However, the foregoing statement is made at the citation given and some of the cases there cited seem to sustain it in its broadest aspect, notably Alabama cases decided in 1852 and 1874 and a Maryland case decided in 1833. The decision in the principal Alabama case cited, Pharis v. Leachman (1852), 20 Ala. 662, seems to be based on the facts of the particular case and the then recognized chancery jurisdiction of that state. It was a bill in equity to pursue certain property which allegedly the deceased debtor had fraudulently placed in the name of a trustee for the benefit of his wife and children, the debtor's estate being insolvent. It was held that equity had primary jurisdiction, in such a case, arising out of its general powers in relation to the settlement and administration of estates and could take jurisdiction of the case and withdraw the administration of the estate from the court of probate. We do not deem the New York case cited, Harvey v. McDonnell, 113 N. Y. 526, 21 N. E. 695, as an authority for the statement. There the creditors claim had been allowed against the estate and the personal representatives had exhausted the property "both real and personal," which had "come to their hands . . . by applying it upon the debts of the intestate, and, among others, the plaintiff's

claim." In that case the plaintiff, who was seeking the aid of equity, had first gone as far as he could in law, and exhausted his legal remedies. [Hasten v. Castner, 31 N. J. Eq. 697, is cited.] That case is first found at 29 N. J. Eq. 536, and there it is held when a creditor has exhausted his legal remedy against the decedent debtor's estate, "of which he died seized," a court of equity "should be open" to enable him to reach property which the debtor "may have placed in the hands of others." At 31 N. J. Eq. 697, it is pointed out that the claim had first been presented under oath to the administrator, acknowledged and in part paid by him, and its validity conclusively established. Ohm v. Superior Court, 85 Cal. 545, 26 Pac. 244, is cited as authority for the statement but we do not perceive how it can be so considered. That case holds that to have the right as a creditor, under statute, to compel the executor or administrator to bring a suit to set aside a fraudulent conveyance, the claimant must be a creditor whose claim has been allowed against the estate. It suffices to say that, keeping in mind the reasons constituting the basis therefor, we think the more logical rule (and, we believe it is supported by the weight of authority) is, that before the claimant be permitted to proceed in equity as a creditor to set aside an alleged fraudulent conveyance he should be required to establish his claim, at law, against the decedent's estate, and himself as a subsisting creditor, and thereupon, if the estate is insolvent, he is entitled to invoke the aid of equity. [See statement at 27 C. J., p. 732, sec. 588.]

Another exception which has been held to excuse the establishment of the claim at law before proceeding in equity is where the validity and amount of the creditor's claim is acknowledged or admitted by the debtor, in which case a judgment is unnecessary. [Farmers v. Traders Bank v. Kendrick, supra; C. Bewes, Inc., v. Buster, supra; White Co. v. Finance Corp., 63 Fed. (2d) 168; D. A. Thompkins v. Catawba Mills, 82 Fed. 780; 27 C. J. 732; 14 Am. Jur. 695; Ziska v. Ziska, 23 L. R. A. (N. S.) 18.] In both Farmers & Traders Bank v. Kendrick, and C. Bewes, Inc., v. Buster, supra, this court held that an admission or acknowledgment of the alleged indebtedness, and the validity thereof, excused the prior establishment of it at law. Plaintiff herein seeks to bring herself within that exception by alleging, "that the validity of her claim is undisputed by defendants, or anyone else." Such however does not amount to an affimative allegation that the validity and amount of her claim has been acknowledged or admitted by either the debtor or anyone in his stead authorized to make a binding and conclusive admission thereof.

Plaintiff herein has not established her claim against the estate at law and does not come into equity as a subsisting creditor. Nor is there any allegation that the validity of the claim is acknowledged or admitted or other ground alleged to excuse the prior establishment of her claim against the estate in one of the methods prescribed by law.

Under the circumstances the allegation that the estate is insolvent is not alone sufficient to give a court of equity jurisdiction. Wherefore we must hold that the demurrer was properly sustained on the ground that the petition does not state facts sufficient to constitute a cause of action. The judgment of the circuit court is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.