JONATHAN HUNT et al. *v.* RICHARD FIELD et al.

1. A general creditor, having no specific lien on his debtor's property, has no right to interfere with any disposition his debtor may make of it, but an attaching creditor has such a lien as will enable him to maintain a suit in chancery to set aside, as fraudulent, conveyances or judgments under which the property attached is claimed.

2. A bill for that purpose should be for the benefit of the complainant, and such others of the creditors as should come in and seek relief by and contribute to the expenses of the suit; and should allege for what amount the attachment was issued, that it was executed, and what property was attached, and should make the defendant in attachment a party.

This was an injunction bill, to set aside, as fraudulent, certain confessed judgments and a conveyance of personal property, and to restrain the defendants from selling or disposing of the property conveyed and levied on. An injunction was granted, and a motion to dissolve argued at February Term, 1852. The facts of the case sufficiently appear in the opinion of the Chancellor.

*Messrs. Hoxsey* and *A. Whitehead,* for the motion.

*Mr. Barkalew,* for the complainants.

THE CHANCELLOR. One Samuel Schoonmaker was carrying on a mercantile business at Paterson, in Passaic county. Prior to the 27th day of January last past, he conveyed all the goods and merchandise in his store to the defendants, Slawson, Barret & Co., a firm doing business in New York. He also confessed a judgment to the said firm in the Passaic Pleas for the sum of $1368.16. Prior, in point of time, to this conveyance and judgment, the said Schoonmaker had confessed, in the same court, a judgment in favor of others of the defendants, Field, Merritt & Co., of the city of New York, for the sum of $3737.35. The goods were delivered

under the conveyance mentioned, and executions were issued upon the judgments, levies made and the property advertised for sale by the sheriff.

On the twenty-seventh day of January last, the complainants caused a writ of attachment to be issued out of the Circuit Court of the county of Passaic, against Schoonmaker as an absconding debtor.

The complainants have filed this bill, alleging the conveyance of the goods, and the judgments confessed to be fraudulent, and praying an injunction against the sheriff and the rest of the defendants, restraining them from selling or otherwise disposing of the goods, and that the conveyance and judgments confessed to the defendants may be decreed null and void for fraud.

It is well settled, that a general creditor having no specific lien on the debtor's property, has no right to interfere with any disposition his·debtor may see fit to make of it. *Edgar* v. *Clevenger et al.*, 2 *Green's Ch. Rep.* 258–464; 1 *Green's Ch. Rep.* 258, and note to the case.

But the complainant in this case insists that he has, by virtue of his attachment, such a lien as a court of equity will recognize, in order to give him a standing in the court, to question the disposition of the debtor's property.

By the attachment act, the sheriff is commanded to attach the rights and credits, moneys and effects, goods and chattels, lands and tenements of such debtor, wheresoever they may be found, and it is declared that the writ shall bind the property and estate of the defendant so attached from the time of executing the same.

The act declares that the personal property attached shall remain in the safe keeping and care of the officer, in order to answer and abide the judgment of the court, unless the garnishee shall give bond for its forthcoming. It provides that where the garnishee denies having any property of the debtor in his possession, or of his being indebted to him, the plaintiff in attachment may, under certain circumstances, institute a suit at law against the garnishee, which shall be continued

by the court until the action against the defendant in attachment shall be adjudicated upon and determined.

The act, in these and in various other ways, has given every facility to the plaintiff in attachment, to reach and secure the debtor's property, both real and personal. And to the auditors appointed by the court from which the attachment may have issued, extraordinary powers are given to examine the wife of the defendant and other persons, under oath, touching all matters relating to the trade, dealings, moneys, debts, effects, rights, credits, lands, tenements, property and estate of the defendant, and his *secret grants or fraudulent transfer or conveyance of the same.* And they may issue their warrant to the sheriff or any constable of the county, commanding them to break open any house, chamber, room, shop, door, trunk, chest, or other place or thing where they shall have reason to believe any property is deposited or secreted. And finally, it is enacted that this act shall be construed in all courts of judicature in the most liberal manner for the detection of fraud, the advancement of justice, and the benefit of creditors.

Where the legislature has done everything in its power towards enabling the attaching creditor to reach the debtor's property, in whosoever hands it may be, and has enjoined it upon all the courts of the state to give the most liberal construction to the act, for the purpose of ferreting out fraud, to advance justice and benefit the creditors, is it a sufficient reason, when this court is appealed to to exercise its powers, in preventing the whole of the debtor's estate, real and personal, from being swept beyond the reach of the attachment by a fraudulent conveyance or judgment, to refuse its aid, and declare itself powerless, upon the ground that the plaintiff in attachment has no specific lien upon the property ? By virtue of his attachment the creditor attaches all the rights and credits by the express provisions of the act. What better lien does a judgment and execution creditor obtain ? In fact, he gets none at all, for he cannot, by virtue of his execution, levy upon or sell them.

In the case of *Melville* v. *Brown*, 1 *Harr. R.* 364, James Hoy, who had taken out an attachment against Brown, moved the Supreme Court for a feigned issue to try the *bona fides* of a judgment confessed to Melville. The Supreme Court denied the motion, upon the ground that if the applicant had gone into a Court of Chancery, the court would not have entertained his bill, because he was no more than a creditor at large. The learned Chief Justice cites the leading American and English cases for the general principle that a creditor at large cannot interfere with the disposition of his debtor's property. Two reasons are given why a court of equity would not interfere on behalf of an attaching creditor. First, the reason given by Chancellor Kent, in *Wiggins et al.* v. *Armstrong et al.*, 2 *J. C. R.* 144, that to permit such an interference might lead to an unnecessary, fruitless and oppressive interruption of the rights of the parties. And this remark is made in view of the fact that upon investigation, it may turn out that there is no debt due from the defendant to the plaintiff, and if so, the litigation would have been altogether fruitless, whether the judgment questioned was fraudulent or not.

But while such a reason may be good as respects a mere creditor at large, may it not be answered that in reference to an attaching creditor, the act itself justifies, and almost commands, this interference? Does not the act put him, by virtue of his attachment, upon a very different footing from that of a mere creditor at large? And reviewing the object and policy of the act throughout, is it not obligatory upon courts of law and equity to construe the provisions of the act liberally, although it may occasion some delay, inconvenience and expense to parties? The same inconvenience and oppression here suggested, necessarily follow upon the execution of some of the provisions of the act. The auditors may bring suits for sums under one hundred dollars. Suppose they should sue and recover the money, and after all it should turn out that the defendant in attachment did not owe the plaintiff, or anybody else, anything; or suppose, after putting these alleged creditors of the defendant in attachment

to the inconvenience and expense of a suit, it should turn out they were not creditors, how much expense, inconvenience and oppression, would be incurred and suffered to no purpose? The sheriff, under the direction of the auditors, may break open houses, trunks, and chests; or may demand of individuals having property in their possession supposed to be the defendant's, to deliver it up to his custody, or to give bonds for its forthcoming when required; or he may, under certain circumstances, summon a jury to try the right to the property. If it should turn out in the end, that the defendant in attachment owes nothing, there would be very great hardships, and in many instances very oppressive, and yet they must be endured, because the legislature have thought proper to impose them as burthens, in order to promote the administration of justice. Surely, in view of all these proceedings, recognized and prescribed by the act, it cannot be said that the creditor, or creditors, who are pursuing their rights under and by virtue of a writ of attachment, armed at every point with instruments and power to reach the debtor's property, or supposed property, whether secured by bars and bolts, or covered up in the hands of others under fictitious claims, have no more right in a Court of Chancery to question the disposition of such property, than one whom the law has as yet provided with no process to follow and impound it.

But is not this idea of oppression very much imaginary? As far as the debtor is concerned, all his rights over the property are already interfered with and interrupted. The attachment has taken from him the custody and control of the property. But it may be in the hands of another who claims it under a judgment confessed, or under a mortgage given to him by the defendant in attachment. The attaching creditor, whom the law has permitted to take out a writ to impound the property until a court of law can ascertain judicially whether or not he is a creditor, files his bill, charging the judgment or mortgage to be fraudulent. If by his answer the court sees he has a clear conscience, his disposition of the property will not be interfered with. But if, out of his own mouth he is convicted of fraud, what oppression is it for this

court to control his actions over the property, until the court at law where the legal proceedings have been instituted, shall have judicially determined whether there are any, and if so, who are the creditors entitled to investigate the fraud ?

By the provision of the act already referred to, where the plaintiff in attachment sues the garnishee, and holds him to bail, the court continues the suit until the action against the defendant in attachment shall be adjudicated upon and determined.

But it is said again, that the plaintiff has no lien upon the defendant's goods; and the case in 1 *Harr.* is referred to as authority. The court do there say that the plaintiff has no lien upon the goods—that they are not in his custody, or subject to his control—that he never had possession of them, and could not, therefore, acquire a lien upon them, such as an attorney has upon deeds and papers for his costs ; a factor, upon goods consigned to him for his claims as factor ; a common carrier, upon the goods he has carried, for his wages ; or an inn-keeper, upon the horse of his guest, for the amount of his bill. This is true ; nor has a judgment and execution creditor any such lien, nor any possession or control of the property levied upon. The court says, "goods, when properly attached, are strictly in the custody of the law." And so they are when levied upon by virtue of an execution. The plaintiff has no more control over them in the one case than in the other. And this court will interfere if any such control is attempted to be exercised. *Edgar* v. *Clevenger et al.*, 1 *Green Ch. Rep.* 263. The court, in 1 *Harr.*, say : " Liens are of two kinds—1st. Such as a party acquires by his own act; or, 2d. Such as the law creates ; as in case of judgment and execution." But why not add "attachment" also, for by the very terms of the act the attachment *binds* the property and estate of the defendant attached from the time of executing the same. What is this but creating a lien upon the property for such debts, if any, as may be found due, by the judgment of the court, to the plaintiff in attachment, and other applying creditors.

By the act respecting executions, (*Statutes of New Jersey,*

*R. S.* 977, § 3,) the same word *bind* is used as in the attachment act.

I do not feel myself at liberty to draw a distinction between the nature of a lien by virtue of an execution and that of a lien by virtue of an attachment; nor should I consider I was giving to the act a liberal construction for the detection of fraud, if upon so nice a question I should refuse to a complainant the aid of this court in investigating the *bona fides* of an alleged fraudulent. judgment or conveyance.

Upon the argument, the case of Quackenbush *v.* Van Blarcom et al. was referred to, which was a case upon this point in every respect like the one before the court. It is not reported. The Chancellor's opinion was mislaid and not published, but I have examined the papers on record. Chancellor Pennington sustained the bill. I have seen the brief of counsel who argued that case. This point was discussed, and the case of Melville et al. *v.* Brown was relied upon. I am likewise informed that Chancellor Halsted sustained a like bill. Had the opinions of the Chancellors been published, I should have felt satisfied to have acquiesced in their views, without giving my own at length.

But this bill is informal and deficient in several particulars, and cannot be sustained.

The bill ought to have been framed for the benefit of the complainant, and such others of the creditors of the defendant as should come in and seek relief by, and contribute to the expenses of the suit. The bill does not allege for what amount the attachment was issued—nor that it was ever executed—nor what property was attached—whether real or personal—nor whether any property at all was attached. It would seem rather from the bill that the goods and chattels which were subject to execution were not attached for that reason. There certainly is no allegation in the bill that the property claimed by these judgment creditors was attached. As to the books of account, which the bill alleges were fraudulently conveyed to some of the defendants, it is stated that the sheriff, on levying the said writ of attachment upon the books; it was ascertained the defendant, the day before

he absconded, had assigned them to some of the defendants, but whether the sheriff found the books and attached them, is not stated.

The defendant in attachment is not made a party to the suit. There can be no decree without him. The bill is therefore also defective for the want of the necessary parties.

For the reasons stated, let the injunction be dissolved, with costs.

CITED *in Williams* v. *Michenor,* 3 *Stockt.* 524; *Oakley* v. *Pound,* 1 *McCar.* 180; *Robert* v. *Hodges,* 1 *C. E. Gr.* 302; *Curry* v. *Glass,* 10 *C. E. Gr.* 109; *Davis* v. *Dean,* 11 *C. E. Gr.* 437; *Tomlinson* v. *Stiles,* 4 *Dutch.* 201; *Stewart* v. *Walters,* 9 *Vr.* 277.