The administrator of DAVID COCKS, deceased,

*v.*

ANNA C. VARNEY.

1. An attaching creditor, having a lien on the property of his debtor by force of the Attachment act, is entitled, prior to the recovery of judgment, to the aid of a court of equity in setting aside a fraudulent conveyance or encumbrance.

2. But, in such case, as his right to a lien rests entirely on his own act and not on a judgment, he is bound to show affirmatively that he is a creditor of the defendant, and also that as a creditor he has, in the mode pointed out in the statute, acquired the lien which he asserts.

3. No one but a creditor for a debt of definite amount, and having a right to maintain an action at law for his debt, can acquire the lien given by the Attachment act.

4. In the absence of statutory provision otherwise directing, a stranger to a contract under seal cannot maintain an action at law on it.

On hearing on demurrer.

*Mr. Edwin B. Williamson* and *Mr. Thomas N. McCarter,* for the demurrant.

*Mr. William H. Gale,* of New York, and *Mr. Robert Allen,* for the complainant.

VAN FLEET, V. C.

The defendant in this case has demurred to the complainant's bill, denying that the case made by the bill is sufficient to entitle the complainant to the relief he asks. The complainant sues as

administrator of David Cocks, deceased, and grounds his right to a decree on a contract made by the defendant with The People of the State of New York.

The complainant rests his right to relief on the following facts : Prior to the 23d day of October, 1869, David Cocks, under a commission issued out of the supreme court of the State of New York, had been found to be an habitual drunkard ; on the date last named the same court appointed George J. Barlow committee of the person and estate of Cocks, and Barlow thereupon executed a bond to The People of the State of New York, in the sum of $36,000, with the defendant as his surety, conditioned that if Barlow should faithfully perform the trust reposed in him as the committee of Cocks, according to the statute, and should render an account whenever required by law, and should observe the orders and directions of the court which appointed him, then the bond should be void, otherwise it should remain in full force and virtue ; the bond was executed under the hands and seals of both Barlow and the defendant; Barlow, after executing the bond, " as such committee, received and had the sum of $17,000 of the moneys, estate and effects of David Cocks;" subsequently, proceedings were instituted in the supreme court of New York, on behalf of Cocks, which resulted in an order being made directing Barlow to account and pay over to Cocks, on the 1st of July, 1875, "the moneys aforesaid." This order Barlow has never performed or obeyed. Cocks died intestate, in this state, in September, 1881, and administration on his estate was granted by the surrogate of Monmouth county to the complainant, in April, 1888. The bill then alleges that, in consequence of Barlow's having received and retained $17,000 of David Cocks's estate, the defendant, by the terms of the bond which she executed as the surety of Barlow, became indebted to the complainant, on his taking out letters of administration on Cocks's estate, in that sum. Proceeding on this notion, the complainant, in April, 1888, made oath that the defendant was indebted to him in the sum of $17,000, and on such oath procured a writ of attachment to be issued out of the court of common pleas of Monmouth county against the defendant as a non-resident debtor. Certain lands,

formerly belonging to the defendant, were seized under this writ. Just prior to the issuing of the writ of attachment these lands were conveyed by the defendant, Varney, to another defendant in this suit. The object of the complainant's bill is to procure a decree nullifying this conveyance, and also avoiding two mortgages made by the defendant, Varney, on the lands in question prior to her conveyance of them. The deed and mortgages are charged to have been made by the defendant with intent to defraud the complainant as her creditor.

Two fatal faults are imputed to the complainant's bill: First, it is said, that no judicial tribunal has power, in the absence of an express statutory grant, to deprive a citizen of his property and place him under the control of a guardian, on the ground that he is an habitual drunkard, and inasmuch as the bill does not aver that the proceeding in the supreme court of the State of New York, resulting in a finding that David Cocks was an habitual drunkard, was authorized by statute, it must be presumed that that proceeding was without authority of law; and, second, it is said, that the bill shows on its face, clearly, that at the time the complainant sued out the writ of attachment under which he claims, no debt was due to him for which he could have maintained an action at law against the defendant. As the last objection strikes at the foundation of the complainant's case, and must, if it is found to be well-taken, result in its overthrow, I shall consider it first.

The complainant's right to challenge the validity of the deed and mortgages in question does not rest on a judgment, but is such, and such only, as he acquired by suing out his writ of attachment. The eighteenth section of the statute, authorizing the issuing of attachments against absconding and absent debtors, declares, that a writ of attachment shall, immediately on its issue, become a lien on the lands of the defendant, and remain so until the debts of the plaintiff in attachment and other applying creditors are satisfied, or judgment shall pass against them. *Rev. p. 45.* The lien acquired by suing out a writ of attachment, it has been repeatedly held, is sufficient to entitle the plaintiff in attachment to file a bill in equity to free the subject of his lien from

all obstructions his debtor has created in fraud of his creditors.. *Hunt* v. *Field, 1 Stock. 36 ; Williams* v. *Michenor, 3 Stock. 520; Robert* v. *Hodges, 1 C. E. Gr. 299.*

The important question which this case presents is, Do the averments of complainant's bill show that he has acquired a lien on the lands, which he is seeking to reach, in the manner directed by the statute under which he asserts a right of lien ? His right of lien does not rest on a judgment. No court has, as ˙yet, adjudged that the defendant is indebted to him to the amount of a single penny. Whatever right he has is simply such as he has acquired by his own oath, and the act of the clerk of Monmouth county in issuing a writ, at his request, against the defendant. Where, in a case like the present, the questions whether the com-- plainant is a creditor or not, and whether he has acquired a lien or not, are open and wholly unconcluded by judicial sentence, this court is at liberty to consider and decide them as it does any other question submitted to its judgment. And where the foundation of the complainant's action is claim to a lien, arising simply from his own act, the burden is on him, and to be entitled to prevail he must show affirmatively that he is a creditor with a right of lien. The defendant, in such a case, is at liberty to contest the whole ground on which the complainant's action stands, and to interpose any defence which will show that the complainant is not a creditor, or that he has no lien. *Branting-ham* v. *Brantingham, 1 Beas. 160.*

To acquire the lien which the complainant makes the foundation of his action in this case, it is indispensable that the person attempting to acquire it shall be a creditor of the defendant, with a right to maintain an action at law for his debt, and also that his debt shall be founded on a contract, and be of such a nature as that, under the old practice, he would have been entitled to have had his debtor held to bail on simply filing his own affidavit of his cause of action. In other words, his debt must be certain and liquidated, so that the intervention of a court or jury is not necessary to determine its amount. That the person seeking to acquire this lien must be a creditor of the defendant, with a right to maintain an action at law for his debt, is made clear both by

the language of the Attachment act and the construction which it has already received. In *City Bank* v. *Merrit, 1 Gr. 131, 134,* Chief-Justice Ewing said : " The great purposes of the Attachment act are, by seizing the property of a debtor, to compel his appearance to answer the demand of the plaintiff, when, from non-residence or flight, he is beyond the process of our judicial tribunals, and, on his failure of appearance, to apply such property to*the just end of satisfying his debt. An attachment is an extraordinary, not an ordinary writ. To use it, when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit and design of this mode of procedure. It is only when the creditor cannot employ the latter that he is permitted to resort to the former." The same view, in substance, was expressed in *Branson* v. *Shinn, 1 Gr. 250.* That the debt must be certain and definite, such as a creditor would have been entitled, under the old practice, to have claimed bail for, on simply filing his own affidavit of his cause of action, is settled by *Jeffery* v. *Wooley, 5 Hal. 123,* and *Boyd* v. *King, 7 Vr. 134.*

These authorities, considered in connection with those which will be cited, make it entirely clear, that the complainant has never possessed the right which is indispensable to the acquisition of the lien which he asserts. He has never been a creditor of the defendant, with a right to maintain an action at law for his debt. He is not a party to the bond which he arbitrarily made the basis of his proceeding in attachment; nor has that instrument been assigned to him ; nor, so far as appears, has any tribunal, having a right to exercise jurisdiction over that matter, adjudged that its condition has been broken. It is elementary law that, in the absence of a statutory provision otherwise directing, a stranger to a contract under seal cannot maintain an action at law on it. The rule on this subject, given in *Chitty's Pleading (vol. 1 p. 3),* reads as follows: " If a bond be given to A, conditioned for the payment of money to him for the use or benefit of B, or conditioned to pay the money to B, the action must be brought in the name of A, and B cannot sue for or release the demand. * * * It is an inflexible rule, that if a deed be *inter partes,* that is, on the face of it expressly describe

and denote who are the parties to it—as between A of the first part, and B of the second part—C, if not expressly named as a party, cannot sue thereon, although the contract purport to have been made for his sole advantage, and contain an express covenant with him to perform an act for his benefit. In such a case, C is a stranger to the deed, and violence would be done to the expressed intention of the parties were he to be allowed to maintain an action on it in his own name." The rule is stated in the same way, substantially, in *1 Chitty on Contracts (11 Am. ed.) 77.* In *Chesterfield & Midland Silkstone Colliery Co.* v. *Hawkins, 3 Hurl. & C. 677,* it was held that this was a positive rule of law, and not a mere rule of construction, which the courts might vary according to the intention of the parties. The rule is otherwise in respect to simple contracts. There, if one person makes a promise to another, for the benefit of a third, the third may maintain an action on it in his own name. *Joslin* v. *New Jersey Car-Spring Co., 7 Vr. 141.*

It is clear that the complainant had no right of action on the bond in question at the time he sued out his writ of attachment. He could not have maintained an action at law on the bond in the courts of the State of New York without averring other material facts than those set out in his bill in this case. *Hood* v. *Hood, 85 N. Y. 561.*

The demurrer must be sustained, with costs.