Complainants, creditors of Alfred L. Harder, deceased, allege that in his lifetime, while indebted to complainants, he transferred real and personal property to his sister, the defendant, without an adequate consideration and thereby rendered himself insolvent. They pray that she be enjoined from disposing of the property until they have an opportunity to reduce their claims to judgment. Complainants move for restraint pendentelite and defendant moves to dismiss the bill for lack of equity. The facts are undisputed. Complainants' claims were rejected by the executors of decedent's will, one of whom is the fraudulent grantee herself. Each complainant then began suit in the Bergen county common pleas and these suits have not been reached for trial and are still pending. Since the indebtedness of decedent to complainants is admitted for the purpose of these motions, it follows that the executors erroneously rejected their claims. *Page 541 
A valuable part of the property transferred by the debtor to his sister consists of corporate shares which are practically negotiable instruments.
Underlying suits to set aside fraudulent conveyances is the rule that a debtor, while permitted to exercise the widest discretion as to the time and manner of disposing of his property, must exercise that discretion with fair regard to the right of his creditors to be paid. Candler v. Petit, 1 Paige
(N.Y.) 168. "The cardinal principle in all such cases is that the property of the debtor shall not be diverted from the payment of his debts to the injury of his creditors, by means of the fraud." Clements v. Moore, 73 U.S. 299. Implied is that, upon the creation of the debt, or at latest upon the making of the fraudulent transfer, there vests in the creditor some title or right in the property, however vague and inchoate. But the creditor, at least until the statute of 1919, had no judicial means of protecting his right until his debt matured and he acquired a legal lien on the property. The early cases supported this denial of a remedy on several grounds. The court would not recognize one as a creditor until he had established his status by a judgment — and, of course, he could not sue until his debt fell due. Again, the creditor might not actually be injured by the fraudulent conveyance, since he might find other property of the debtor to satisfy his debt; he must first exhaust his legal remedy to the extent of acquiring a lien. Melville v. Brown,16 N.J. Law 363. The first of these grounds was of doubtful validity, since the debtor might, in the suit to set aside the conveyance, admit the debt. And this branch of the rule was seemingly abandoned when an attaching creditor, before judgment, was recognized as competent to maintain suit. Hunt v. Field,9 N.J. Eq. 36. And it was held that where complainant had a lien but not a judgment, chancery would decide the question of debt as it does any other question submitted to it. Cocks v. Varney,45 N.J. Eq. 72. The other rule, namely, that the creditor must exhaust his remedy at law, was strengthened by the broad definition given to fraudulent conveyances. Every voluntary *Page 542 
conveyance, every gift, was held fraudulent as to an existing creditor without regard to actual intent, or to the size of the estate retained by the debtor. It would have been absurd to permit the creditor to challenge such conveyances, without showing actual injury to himself.
"The real ground for not sustaining the bill of a general creditor for relief against the fraudulent disposition of his debtor's property is, that the debt is no charge or lien upon the property of the debtor." Oakley v. Pound, 14 N.J. Eq. 178.
While the creditor had an inchoate interest in his debtor's property, equity would not protect it until it ripened into a legal lien.
The Uniform Fraudulent Conveyance act (P.L. 1919 p. 500; Cum.Supp. Comp. Stat. pp. 44, 142) made two important changes in the law: It excluded from the category of fraudulent conveyances a voluntary transfer, unless there was intent to defraud or unless the debtor was insolvent or was rendered so by the conveyance.Conway v. Raphel, 102 N.J. Eq. 531. Second, the statute permitted a creditor to prosecute, although he had no lien.United Stores Realty Corp. v. Asea, 102 N.J. Eq. 600. In that case, while complainant had no lien, he did have a district court judgment. Chief-Justice Gummere said: "It has been suggested that the section of the statute which has been referred to violates our constitution because it impairs the jurisdiction of the courts of law created by that instrument by conferring upon the court of chancery power to hear and determine actions for debt and for damages arising out of a breach of contract, that power being necessary for the ascertainment of the validity of the creditor's claim and for determining the actual amount due on such claim, if it be found to be valid. If this question was involved in the determination of the present case, we would be inclined to consider the suggestion a meritorious one to the extent indicated."
In Gross v. Pennsylvania Mortgage and Loan Co., 104 N.J. Eq. 439,
complainant had neither lien nor judgment. Defendants denied the indebtedness. Judge Hetfield, writing the opinion, quoted the passage by Chief-Justice Gummere *Page 543 
which appears above, and added: "Without a judgment at law or the establishment of a lien, equity has no jurisdiction to entertain the bill of a creditor, filed to set aside a fraudulent conveyance of the debtor's land, or to enable the creditor to reach the mere equitable estate of the debtor. The establishment of the debt by the law court is the necessary foundation of the equitable jurisdiction." With all respect, I suggest that this sweeping conclusion was unnecessary. The only question presented by the case seems to have been whether chancery had jurisdiction of the debt issue.
I surmise that the court of errors and appeals might permit an equitable remedy to a common creditor where, for instance, it appears that a judgment and execution at law would be unavailing and the debtor by his answer admits the debt, or his defense to it is sham or frivolous, or where the creditor has a foreign judgment or obtains judgment after the bill is filed. I know no ground for holding that the legislature cannot give to a common creditor the right to attack a fraudulent conveyance; and if the legislature can do so, chancery is the proper tribunal.
Complainants, in view of the Gross decision, do not ask that the fraudulent conveyances be set aside, but only that the grantee be restrained, pending the law actions, from disposing of the property fraudulently conveyed to her. In Axt v. 61Lincoln Park, 108 N.J. Eq. 459, a creditor of a decedent could not file his claim because no administrator of the debtor's estate had been appointed. Vice-Chancellor Backes retained the bill and enjoined conveyances by the fraudulent grantee. "The complainant avers that he is about to apply for an administrator. Until he can do that, and then present his claim to the administrator, and thereafter supplement his bill setting up a compliance with the rule of Haston v. Castner, 31 N.J. Eq. 697,
the bill should be retained. Unless it is, the complainant is in danger of losing his lien by sale by the fraudulent grantee to a bona fide purchaser for value." In Levitsky v. Wirzes,109 N.J. Eq. 25, Vice-Chancellor Leaming held that a bill filed by a common creditor, to set aside a fraudulent conveyance, may be retained *Page 544 
until judgment be rendered in a pending action at law, and thatad interim restraint to conserve the assets may be had if the situation warrant it.
The motion to dismiss the bill will be denied; complainants' motion will be granted. If complainants fail to bring their actions to trial at the first opportunity, defendant may apply here to vacate the restraint.