ATLAS NATIONAL BANK, *Plaintiff in Error*, V. JOHN
MORAN PACKING COMPANY *et al.*

Division Two, March 10, 1897.

1. **Practice**: EQUITY: CREDITOR'S BILL. No direct trust or lien at-
taches to the property of a corporation in favor of its creditors, nor
can a simple contract creditor, whose demand against such corpora-
tion is not due, maintain an action in equity in respect to the admin-
istration of its assets, even though such corporation is insolvent.

2. **Practice**: EQUITY: FRAUDULENT MORTGAGE: REMEDY. Where a cor-
poration has fraudulently mortgaged its property, with a view of
cheating its creditors, although such mortgages render it insolvent,
the creditor's remedy, to secure his demand not yet due, is by attach-
ment or some other proceeding at law. Usually the creditor must put
his demand into a judgment against his debtor and exhaust his rem-
edies at law, before he can proceed in equity to subject choses in
action to its payment.

3. **Equity**: RIGHT OF CREDITORS. Neither the insolvency of a corpora-
tion, nor the execution of an illegal trust deed, nor the failure to col-
lect in full all stock subscriptions, nor all together, give to these
simple contract creditors any lien upon the property of the corporation,
nor charge it with a direct trust. So long as the creditor has no lien
upon the property, the corporation has the same right to sell or mort-
gage it that a private citizen has; and the same steps necessary to be
pursued by a creditor in order to reach property conveyed or disposed
of by a private citizen, with intent to defraud creditors, must be pur-
sued by the creditor of the corporation; and before the creditor can
in either case maintain a creditor's bill, he must show that he has
exhausted his remedy at law.

*Error to Buchanan Circuit Court.*—HON. A. M.
WOODSON, Judge.

AFFIRMED.

*Johnson, Rusk & Stringfellow* for plaintiff in error.

(1)  When the assets of a corporation become impressed with the character of a trust fund for the benefit of its creditors, they should be administered for the equal benefit of all of its creditors, and a simple contract creditor of such corporation may maintain an action in equity, with respect to the administration of such assets.  Such assets can not be reached by attachment or other legal remedy. *Foster v. Mullanphy Planing Mill Co.*, 92 Mo. 90; *Kankakee Woolen Mill Co. v. Kampe*, 38 Mo. App. 229; *White v. University, etc.*, 49 Mo. App. 450; *Doe v. Northwestern Coal and Transportation Company*, 64 Fed. Rep. 928; *Consolidated Tank Line Co. v. K. C. Varnish Co.*, 45 Fed Rep. 7; *Howe v. Sanford Fork and Tool Co.*, 44 Fed. Rep. 231; *Sutton v. Hutchinson*, 63 Fed. Rep. 496; *Bosworth v. Bank*, 64 Fed. Rep. 615; *Case v. Beauregard*, 101 U. S. 688; *Talley v. Curtain*, 54 Fed. Rep. 43; 3 Pomeroy, Equity Juris., page 363; 20 Am. and Eng. Ency. of Law, 48; 2 Morawetz on Private Corporations, secs. 789, 795, 796, 797, and 798, and cases cited, note 4, under sec. 796; *Kennedy v. Creswell*, 101 U. S. 641; *Hagan v. Walker*, 14 How. (U. S.) 29; *Board of Public Works v. Columbia College*, 17 Wall. 521, 532.  (2)  Where the managing officers of a corporation control its board of directors, and also control a majority of its stock, and such officers, in fraud of the rights of its creditors, misappropriate its assets to their own use, and thereby render the corporation insolvent, the assets of such corporation become a trust fund to be administered for the benefit of all of its creditors.  *Doe v. Northwestern Coal and Transportation Co.*, 64 Fed. Rep. 928; *Foster v. Mullanphy Planing Mill Co.*, 92 Mo. 90; *Alberger v. National Bank*, 123 Mo. 313; *LaGrange Butter Tub Co. v. National Bank*, 122 Mo. 154; *Suddath v. Gallagher*, 126

Mo. 393; *Schufeldt v. Smith*, 131 Mo. 280; *Hill v. Rich Hill Coal Co.*, 119 Mo. 9; *Hollins v. Brierfield, etc.*, 150 U. S. 371; 2 Morawetz on Private Corp., secs. 789–795, 796, 797, and 798; *Angle v. Railway*, 151 U. S. 1; *Mann v. Appel*, 31 Fed. Rep. 378; Pomeroy, Eq. Jurisprudence, secs. 155 and 1053; Perry on Trusts, secs. 245, 265, and 288.    (3)   Persons who, conspiring with the officers of a corporation, fraudulently receive its assets, become with respect to its creditors, trustees *ex maleficio*, holding the property so fraudulently received by them, for the benefit of the creditors of such corporation.    *Doe v. Northwestern Coal and Transportation Co.*, 64 Fed. Rep. 928; *Angle v. Railway*, 151 U. S. 1; Pomeroy, Eq. Jurisprudence, secs. 155 and 1053; Perry on Trusts, secs. 245, 265, and 288.

*Brown & Pratt* for defendants in error.

(1)   This is an evident attempt on the part of a creditor whose demand is not yet due, to evade the dangers of the attachment laws of the state, which give him a complete remedy at law, subject to the liability to respond in damages inflicted by an unjust accusation of fraud.   This can not be done.   The creditor must first establish his claim at law.   He can not be heard to charge fraud on his debtor until it is first ascertained that he is a creditor.   *Crim v. Walker*, 79 Mo 335.   He must exhaust his legal remedies before proceeding in equity.   *Humphreys v. Atlantic Milling Co.*, 98 Mo. 542; *Mullen v. Hewitt*, 103 Mo. 639; *Hollins v. Brierfield Coal and Iron Co.*, 150 U. S. 371.   All the cases above cited are to the effect that a general creditor will not be permitted to attack an alleged fraudulent conveyance of his debtor; he must first obtain a judgment at law.   The case of *Humphreys v. Atlantic Milling Company, supra,* completely covers the one at

bar. That was a suit by a general creditor of an insolvent corporation to set aside an alleged fraudulent transfer of property. It was held that the general rule that a creditor, before he can maintain a creditor's bill, must show that he has exhausted all remedies at law, was applicable, because in that case, if the allegations of fraud were true, the corporation could be attached and its property in the hands of others could be garnished. (2) The plaintiff's brief admits the general rule that a creditor's bill can not be maintained by a general creditor against one in the jurisdiction of the court, but undertakes to evade its force by the assertion of the principle that the property of an insolvent corporation constitutes a trust fund for the benefit of its creditors. Its position is fully answered by the case of *Humphreys v. Atlantic Milling Company*, cited above. There is nothing in the principle applicable to this case. (3) Property fraudulently transferred by an insolvent debtor, whether it be a person or corporation, constitutes a trust fund for the payment of debts, and the holders of such property are trustees *ex maleficio* for the benefit of creditors. The corporation and individual debtor stand upon the same footing in this respect. *Graham v. Railroad*, 102 U. S. 148; *Railway Company r. Ham*, 114 U. S. 587; *Fogg v. Blair*, 133 U. S. 534, 534; *Hollins v. Brierfield Coal and Iron Co.*, 150 U. S. 371; *Schufeldt v. Smith*, 131 Mo. 280; *Alberger v. Bank*, 123 Mo. 313.

BURGESS, J.—This action was begun in the circuit court of Buchanan county on the fifteenth day of March, 1895, by the Atlas National Bank, a national bank then doing business in the city of Chicago, as plaintiff, against John Moran Packing Company, John Moran, State National Bank, Charles B. France, John Dono-

van, Jr., and the St. Joseph Stock Yards and Terminal Company, as defendants.

Omitting the caption, the petition is as follows:

"Plaintiff, for cause of action, states that at all times hereinafter mentioned it has been, and now is, a corporation doing business as a national bank under, and by virtue of, the laws of the United States governing national banks, and, as such, conducting a banking business in the city of Chicago, Cook county, Illinois.

"That the said State National Bank at all times herein mentioned has been, and is, a corporation doing a banking business in the city of St. Joseph, Buchanan county, Missouri, and organized under the laws of the United States governing national banks.

"That the Saint Joseph Stock Yards & Terminal Company has been, and is, a corporation organized and created under, and by virtue of, the laws of the state of Missouri.

"That the John Moran Packing Company is a corporation organized and created under, and by virtue of, the laws of the state of Illinois, and, as such, was incorporated on or about the —— day of October, 1894. That the capital stock of said John Moran Packing Company is, and was, one hundred and fifty ($150,000) thousand dollars, all of which was subscribed and paid in full at the time of the incorporation of said company. That the corporators and stockholders of said company were, and are, John Moran, W. T. Nash, C. E. Linaker, P. Fogarty, and C. W. Taylor; and said company has had no other stockholders at any of the times herein mentioned. That all of the capital stock of said company was at the time of its incorporation really paid in and owned by John Moran, but for the purpose of complying with the legal formalities required by the law in incorporating such companies, John Moran gave the said W. T. Nash twenty-five thousand

($25,000) dollars of the capital stock of said company, to the said P. Fogarty, five thousand ($5,000) dollars, to the said C. W. Taylor, fifteen thousand ($15,000) dollars.

"That the articles of incorporation of said company provided that its affairs and business should be controlled and managed by a board of five directors, which said board has at all times since the incorporation thereof been composed of the said John Moran, Thomas Nash, C. E. Linaker, P. Fogarty, and C. W. Taylor; and the officers of said company have at all times been, and are, as follows: John Moran, president; W. T. Nash, vice-president; C. W. Taylor, secretary, and P. Fogarty, treasurer. That said company was incorporated for the sole purpose of slaughtering, packing, and selling hogs and cattle, and its business operations were conducted at the said city of St. Joseph and in the city of Chicago. The main office of said company was, by the provisions of its articles of incorporation, located in the said city of Chicago. That the capital stock of said company was paid in by the transfer to said company, by the said John Moran, of the following described property:

"The packing plant and ten acres of land, upon which the same is situated, is located in or near the town site of St. George, an addition to the city of St. Joseph, which said packing plant was, as hereinafter more fully set forth, conveyed by warranty deed by the St. Joseph Stock Yards & Terminal Company to the said John Moran, and conveyed by warranty deed by the said John Moran to the said John Moran Packing Company, said packing plant being free and clear of any liens and incumbrances at the time of above said transfers. The premises used as a packing plant located in said city of Chicago, and owned by the said John Moran, and operated by him in the conduct of his

packing business, which said plant was conveyed by warranty deed, executed by said John Moran, to the said John Moran Packing Company.

"Certain premises known as the up-town market and described as lot number twelve (12), in block number (14), in O'Donnahughe's addition to the city of Saint Joseph, which said real estate was conveyed by warranty deed by said John Moran to the said John Moran Packing Company. A large quantity of pork, the product of the two packing plants, on hand at the time of the incorporation of said company, and all the tools, machinery, supplies, ice, and other property then owned by said John Moran, and used in connection with said packing business.

"That all the said property so transferred by said John Moran to the said John Moran Packing Company, was at said time of a value not exceeding $150,000.

"That at, and prior to, the time of the transfer of all of said property by the said John Moran to the said company, the same had been owned by the said John Moran, and used and operated by him, in the business which he conducted of slaughtering, packing, and selling hogs and cattle, and was transferred to said corporation for the purpose of continuing the conduct of such business as a corporation.

"That the packing plant and ten acres of land on which the same was situated, located in said town site of St. George, above referred to, was acquired by the said John Moran in the manner following:

"At all times mentioned in this petition and for some time prior thereto, Charles B. France, who at all of such times has been, and now is, the president of the defendant, the State National Bank, was and is the owner of a large quantity of land situated upon the Missouri river bottom, upon which said town site of St. George, the stock yards belonging to the Saint Joseph

Stock Yards & Terminal Company, and the packing plant above referred to are located. At the time said France acquired the ownership of said land it was unimproved property, about three miles distant from the city of Saint Joseph, and suitable only for agricultural purposes. That for the purpose of disposing of said property at greatly increased values, the said France procured the formation of the corporation known as the Saint Joseph Stock Yards & Terminal Company, and transferred to said corporation a portion of said land upon which large and expensive stock yards were built, and in order to provide business for the said stock yards, the said stock yards company also built the packing plant subsequently transferred to the said John Moran as above set forth.

"That at the same time the said France laid off the town site of St. George, in order to dispose of the lots in said addition to the laboring men and other people attracted to that locality on account of the enterprises above mentioned. That all of said enterprises were artificial, there being no demand nor sufficient business in said city of Saint Joseph for stock yards of the size and cost of those constructed by said stock yards company, nor for packing houses of the kind constructed by said company, and the sole object and purpose in constructing all of these enterprises was not for the *bona fide* purpose of conducting and operating stock yards and packing houses as business enterprises; but to sell and dispose of at exorbitant prices the real estate owned by said Charles B. France. At about the said time the said Charles B. France procured the organization of various financial institutions in the city of St. Joseph, for the purpose of procuring funds to be loaned to the purchasers of his real estate, to pay the purchase price thereof and to construct improvements thereon.

"That on or about the month of ——, in the year

1893, the said John Moran began the operation of the packing plant above referred to. That his sole capital did not exceed the sum of forty thousand ($40,000) dollars, all of which he invested in the operation of said plant in the purchase of said real estate known as 'The Up-town Market,' and of a residence for himself. That he continued to operate said packing house until on or about the twenty-fifth day of June, A. D. 1894, at which time the Saint Joseph Stock Yards & Terminal Company executed and delivered to said John Moran its warranty deeds, conveying the said packing plant and ten acres of ground upon which it was situated. The consideration in the deed being the sum of one hundred and sixty thousand ($160,000) dollars, although the actual cost and real value of said packing plant did not exceed the sum of one hundred thousand ($100,000) dollars.

"That at the same time, to wit, on or about the twenty-fifth day of June, 1894, the said John Moran entered into a contract in writing with the said Saint Joseph Stock Yards & Terminal Company, by which he undertook and agreed to pay to the said Stock Yards & Terminal Company eight cents per hog upon all hogs packed by him at said packing plant, and to pack not less than two hundred and fifty thousand hogs per annum, so that the revenue derived by said Stock Yards & Terminal Company from the packing operations of said Moran should equal the sum of twenty thousand (20,000) dollars per annum. And it was further agreed that if the said Moran packed a less number of hogs, he should pay to the Saint Joseph Stock Yards & Terminal Company the difference between said sum of twenty thousand (20,000) dollars and the yardage fees upon the hogs so packed by him in any one year. Said difference to be paid within twenty days after the end of each current year. That from and after said

twenty-fifth day of June, 1894, the said John Moran continued the operation of said packing plant upon his own account and as his own property until the said ——— day of October, 1894, when he conveyed the same as hereinbefore stated to the John Moran Packing Company. That during all the times the said John Moran operated said business it was necessary for him to borrow large sums of money, and the said France, as president of the defendant, the State National Bank, procured the same, to be loaned to him by said bank.

"That at the time of the incorporation of the John Moran Packing Company the said John Moran was indebted to the said State National Bank in the sum of one hundred thousand (100,000) dollars, and had been so indebted to said bank in such sum for a long time prior to said incorporation. That at the time of the incorporation of said John Moran Packing Company, the said John Moran was also, and had for some time been indebted to one Mrs. Bamford, of Liverpool, England, in the sum of forty thousand (40,000) dollars.

"That the said John Moran Packing Company held itself out to the world and to this plaintiff as being a corporation with a paid up capital stock of one hundred and fifty thousand (150,000) dollars, and by reason of so doing was enabled to procure credit from this plaintiff and others, and relying upon such fact plaintiff loaned to said John Moran Packing Company, on the twenth-sixth and twenty-ninth days of December, 1894, respectively, the sum of twenty thousand (20,000) dollars, which said sum is wholly unpaid, and is now owing by said John Moran Packing Company to plaintiff, all of which will become due about April 1, 1895. That said packing company also became indebted in large amounts to various persons and corporations in a sum which this petitioner is informed and believes

exceeds fifty thousand (50,000) dollars. That all of said moneys so procured was used in increasing the product of said packing plant, which said product was subsequently conveyed to the said State National Bank, as hereinafter set forth.

"That at all times herein mentioned, the defendant, John Donovan, Jr., has been and is the managing officer of the St. Joseph Stock Yards & Terminal Company; has been and is connected with said France in all his various enterprises above set forth, and interested in the same, and together with said France procured the incorporation of the said John Moran Packing Company and the transfer to it of the assets of said John Moran, as above set forth, and the said Donovan and the said France have at all times been familiar with the financial condition and affairs of the said John Moran and of the John Moran Packing Company, and have actually controlled and conducted said business, although the said John Moran was the nominal head thereof.

"That on or about the eighteenth day of February, 1895, the said France and Donovan and the said John Moran, conspiring together to cheat and defraud your petitioner and the other general creditors of the John Moran Packing Company, and for the purpose of converting into the hands of the said France and Donovan the said packing plant and other assets of the said John Moran Packing Company, and for the purpose of ousting from any participation in the control and management of the affairs of said company, the directors, W. T. Nash and C. E. Linaker, to whom the said John Moran had become unfriendly, procured the execution of the deeds of trust hereinafter described by the said John Moran as president and Charles W. Taylor as secretary, and further procured the transfer to said John Donovan and said France of all of the

property not conveyed in this deed of trust, owned by the said John Moran Packing Company, as hereinafter set forth.

"That the first of said deeds of trust so executed by the said John Moran and the said Taylor, and purporting to be executed upon behalf of the Moran Packing Company, conveyed to the said defendant, John Donovan, Jr., as trustee all of the real estate owned by the said John Moran Packing Company in Buchanan county, Missouri, all machinery, tools and fixtures owned by said company, all cars, horses, mules, wagons, ice and supplies owned by said company and used in connection with its packing business, for the purpose of securing the payment of two promissory notes of twenty-five thousand (25,000) dollars each, both dated November 8, 1894, due three and four months respectively after date, which said notes purport to have been executed by the said John Moran Packing Company, to the defendant, the State National Bank. But this petitioner alleges that if said notes represent a *bona fide* indebtedness to said bank, that it is the individual indebtedness of John Moran to said bank, and was an indebtedness that the John Moran Packing Company had no power or authority or right to assume to pay; that it was for money loaned to the said John Moran while he was conducting said packing operations in his individual name, and before the formation of the said John Moran Packing Company, and that the said John Moran Packing Company could not assume the payment of said indebtedness of the said John Moran without entirely wiping out its entire capital stock, all of which facts were well known to the said Donovan and the said France, and to the said State National Bank.

"That on or about the said eighteenth day of February, 1895, the said John Moran and Charles W.

Taylor, pretending to act as officers of the said John Moran Packing Company, executed and delivered to John Donovan, Jr., as trustee, a deed of trust purporting to be executed by the said John Moran Packing Company, which said deed of trust was in words and figures as follows, to wit:

" 'STATE NATIONAL BANK.

" 'JOHN MORAN PACKING COMPANY.

" 'This indenture, made this 18th day of February, A. D. 1895, by and between the John Moran Packing Company, a corporation organized and incorporated under and by virtue of the laws of the state of Illinois, party of the first part; John Donovan, Jr., of the county of Buchanan and state of Missouri, party of the second part; and the State National Bank of St. Joseph, a corporation organized and incorporated under the laws of the United States, party of the third part, witnesseth:

" 'That the said party of the first part, for and in consideration of the sum of one dollar to it in hand paid, the receipt whereof is hereby acknowledged, and of the deed of trust hereinafter mentioned and created, has granted, bargained, and sold, and by these presents does grant, bargain, and sell, convey, and confirm unto the said party of the second part, the following described real estate and personal property, lying, being, and situated in the county of Buchanan and state of Missouri, that is to say, a tract of land situate in the county of Buchanan and state of Missouri, bounded and described as follows:

" 'Beginning at the S. E.|corner of a ten acre tract of land in section 30, township 57, of range 35, heretofore conveyed by the St. Joseph Stock Yards & Terminal Company to the Omaha Packing Company, by a deed recorded in book 214, page 253, of the records of deeds of Buchanan county, Missouri; thence running

south eighteen (18) degrees and fifteen (15) minutes west, four hundred and thirty-two and $\frac{38}{100}$ feet; thence north fifty-five (55) degrees and twenty-seven (27) minutes west, ten hundred and forty-nine and $\frac{63}{100}$ feet; thence north eighteen (18) degrees and fifteen minutes east, four hundred and thirty-two and $\frac{28}{100}$ feet; thence south fifty-five (55) degrees and twenty-seven (27) minutes east, ten hundred and forty-nine and $\frac{63}{100}$ feet, to the place of beginning, containing ten (10) acres, more or less, the same being the same tract of land heretofore conveyed by the St. Joseph Stock Yards & Terminal Company to John Moran, upon which is situated the packing houses of the said party of the first part; also lot number twelve (12), in block number fourteen (14), in O'Donnahughe's addition to the city of St. Joseph, in said county.

" 'Also all machinery, tools, fixtures, and property of every kind and description situated upon the premises above described and used or intended to be used in connection therewith, or in connection with the business of the party of the first part in connection with the manufacture, sale, and handling of meats and other products of animals;

" ' Also five (5) tank cars owned by the party of the first part and used by it in the transportation of some of the products of its said business; also all ice now in the ice houses on the premises first above described;

" 'Also one pair of black mules, one gray horse, one gray mare, one brown horse, one two horse truck wagon, one dump-cart, and one spring wagon, being the same mules, horses, and wagons and the only mules, horses, and wagons now owned, kept, and used by the party of the first part at its packing house property hereinbefore described.

" 'In trust, however, to secure the payment to the

party of the third part of two promissory notes of the following tenor, that is to say:

" '$25,000.        St. Joseph, Mo., November 8th, 1894.

" 'Three months (without grace) after date we promise for value received, to pay to the order of the State National Bank of St. Joseph twenty-five thousand and no-100ths dollars, at its banking house in St. Joseph, Missouri, with interest at the rate of eight per cent per annum from maturity until paid, the interest, if not paid annually, to become part of the principal and bear the same rate of 'interest. Each of the makers hereof and the indorsers hereon, waive demand and notice of protest on this note.

(Signed)   " 'John Moran Packing Company,

" 'By John Moran, President.

" 'C. E. Linaker, Secretary.

" 'No. 13112.   When due, Feb. 8, 1895.

" '$25,000.        St. Joseph, Mo., November 8, 1894.

" 'Four months (without grace) after date we promise, for value received, to pay to the order of the State National Bank of St. Joseph, Mo., twenty-five thousand and no-100ths dollars at its banking house in St. Joseph, Missouri, with interest at the rate of eight per cent per annum from maturity until paid, the interest, if not paid annually, to become part of the principal and bear the same rate of interest. Each of the makers hereof and the indorsers hereon, waive demand and notice of protest on this note.

(Signed)   " 'John Moran Packing Company,

" 'By John Moran, President.

" 'C. E. Linaker, Secretary.

" 'No. 13113.   When due, March 18, 1895.

" 'And each of said notes, in addition to its tenor as above set out, being signed on the back thereof by John Moran.

" 'Now if the said party of the first part shall well

and truly pay off and discharge the said notes, and all interest that may be due thereon on or before the maturity of the note last above described, then this deed shall be void, otherwise it shall remain in full force and effect, and the said party of the second part shall, at the request of the legal holder or owner of said notes, or either of them, proceed to sell the property hereinbefore described and hereby conveyed or such part thereof as may be necessary to discharge all the said indebtedness and the costs, advancements, charges and expenses incident to the full execution of this trust, at the east front door of the courthouse in the city of St. Joseph, in the county of Buchanan and state of Missouri, at public sale for cash to the highest bidder, first giving thirty days notice of the time, terms and place of such sale and the property to be sold by advertisement in some newspaper published in the city of St. Joseph, and upon such sale shall execute to the purchaser a deed of conveyance in fee simple of the property so sold, which said deed shall in all courts and places, and for all purposes, be *prima facie* evidence of any fact therein recited in any way affecting the power of the party of the second part to execute the same.

" 'Out of the proceeds of the property so sold, the said party of the first part shall pay first the costs and expenses of executing this trust; second, all other costs, expenses, advancements made pursuant to any of the provisions of this deed, or for the purpose of preserving or protecting the property hereby conveyed or the title thereto; third, the amount with interest, which may be due and unpaid on said notes; and fourth, the balance, if any, shall be paid to the party of the first part.

" 'The said party of the first part covenants and agrees that it will at all times keep all insurable prop-

erty hereby conveyed insured to its fair insurable value and the policies of such insurance so made or assigned as to be payable, in case of loss, to the said trustee for application upon the debt hereby secured.

" 'That it will pay all taxes and assessments of every kind and description that may be assessed or levied against any of said property promptly when the same shall become due and payable, and that it will do all and every act necessary for the preservation of said property and the title thereto for the purposes of this security, and in case it shall fail to do and perform all acts in this paragraph mentioned, then the party of the second part, or the holder of said notes, or either of them, may at his own expense do and perform the same, and the costs and expenses so incurred shall constitute a part of the indebtedness hereby secured.

" 'In event of the death or absence from Buchanan county, or the refusal or failure to act, of the said party of the second part, the then acting sheriff of said Buchanan county is hereby appointed as his successor in this trust, and is hereby granted all the rights, powers and privileges granted to the said party of the second part hereunder.

" 'In witness whereof, the said party of the first part has caused this instrument to be signed by its president, attested by its secretary, and its corporate seal to be hereto annexed, the day and year first herein written.                    JOHN MORAN,

" 'President John Moran Packing Company.

" 'Attest: CHAS. W. TAYLOR, Secretary.

" '(Seal John Moran Packing Co., Chicago, Ill. Incorporated 1894.)

" 'STATE OF MISSOURI ⎱ ss,
County of Buchanan.   ⎰

" 'On this 18th day of February, 1895, before me appeared John Moran to me personally known, who

being by me duly sworn, did say that he is the president of the John Moran Packing Company, a corporation, and that the seal affixed to said instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said John Moran acknowledged said instrument to be the free act and deed of said corporation.

" 'In witness whereof, I have hereunto set my hand and affixed my official seal the day and year aforesaid.

" 'MABEL I. HUMISTON,

" 'Notary Public for Buchanan County.

" '(Seal)    Mabel I. Humiston, Buchanan County, Mo.    My commission expires January 20, 1898.

" 'Indorsed No. 5——John Moran Packing Company——Deed of Trust to State National Bank.    Filed for record this 19th day of February, 1895, at 10 o'clock and ——minutes, A. M.

" ' 'JOEL E. GATES, Recorder.

" 'Fee——$4.00.    Paid.'

"And also a certain other deed of trust purporting to be executed by the said John Moran Packing Company, which said deed of trust was in words and figures as follows, to wit.

" 'This indenture made this 18th day of February, A. D. 1895, by and between the John Moran Packing Company, a corporation organized and incorporated under and by virtue of the laws of the state of Illinois, party of the first part, John Donovan, of the county of Buchanan, state of Missouri, party of the second part, and the St. Joseph Stock Yards & Terminal Co., a corporation organized and incorporated under the laws of the state of Missouri, party of the third part, witnesseth:

" 'That the said party of the first part for and in consideration of the sum of one dollar to it in hand

paid, the receipt whereof is hereby acknowledged, and of the debt and trust hereinafter mentioned and created, has granted, bargained, and sold, and by these presents does grant, bargain, sell, convey and confirm unto the said party of the second part, the following described real estate and personal property, lying, being and situated in the county of Buchanan and state of Missouri,—that is to say, a tract of land situated in the county of Buchanan, state of Missouri, bounded and described as follows:

" 'Beginning at the S. E. corner of a ten acre tract of land in section (3) township fifty-seven (57), of range thirty-five (35) heretofore conveyed by the St. Joseph Stock Yards & Terminal Co., to the Omaha Packing Co., by deed recorded in book 214, page 253, of the records of deeds of Buchanan county, Missouri; thence running south eighteen (18) degrees and fifteen minutes (15), west, 432 and 38-100 feet; thence north fifty-five (55) degrees, and twenty-seven (27) minutes west, 1049 and 63-100 feet; thence north eighteen (18) degrees and fifteen (15) minutes east, 432 and 38-100 feet, to the place of beginning, containing ten (10) acres more or less, the same being the same tract of land heretofore conveyed by the St. Joseph Stock Yards & Terminal Co., to John Moran, and upon which is situated the packing house of the said party of the first part; also lot No. 12, in block No. 14, in O'Donnahughe's addition to the city of St. Joseph, in said county; also all machinery, tools, fixtures and property of every kind and description situated upon the premises above described, and used or intended to be used in connection therewith or in connection with the business of the party of the first part in connection with the manufacture, sale and handling of meats and other products of animals; also five (5) tank-cars owned by the party of the first part and used by it in

the transportation of some of the products of its said business; also all ice now in the ice houses on the premises first above described; also one pair of black mules, one gray horse, one gray mare, one brown horse, one two-horse truck wagon, one dump cart and one spring wagon, being the same mules, horses and wagons, and the only mules, horses and wagons, now owned, kept and used by the party of the first part at its packing house property hereinbefore described, in trust, however, for the following purposes:

" 'Whereas, one John Moran, on the 25th day of June, 1894, made and entered into a contract in writing to and with the said party of the third part in words and figures following:

" 'This agreement made this 25th day of June, A. D. 1894, by and between John Moran, of the county of Buchanan and state of Missouri, party of the first part, and the St. Joseph Stock Yards & Terminal Co., a corporation organized and incorporated under and by virtue of the laws of the state of Missouri, and having its principal office and place of business in said county and state of Missouri, party of the second part, witnesseth:

" 'That in consideration of the premises and the covenants and agreements herein set forth and contained to be kept and performed by the said party of the first part, the said party of the second part has transferred and conveyed to the said party of the first part, the packing house and appurtenances and ten (10) acres of land on which the same is situated, now occupied by the party of the first part, and more particularly described as follows:

" 'Beginning at a point the S. E. corner of ten (10) acre tract, in section thirty (30), township fifty-seven (57), range thirty-five (35), heretofore conveyed by the St. Joseph Stock Yards & Terminal Co., to the

Omaha Packing Co. by deed recorded in book 214, page 253 of the records of Buchanan county, state of Missouri.

" 'Thence south eighteen (18) degrees and fifteen (15) minutes west, four hundred and thirty-two and 38-100 feet, thence north fifty-five (55) degrees and twenty-seven (27) minutes west, 1049.63 feet, thence north eighteen (18) degrees, fifteen (15) minutes east, 432.38 feet, thence south fifty-five (55) degrees and twenty-seven (27) minutes east, 1049.63 feet to the place of beginning containing ten (10) acres, and being situated in Buchanan county, in the state of Missouri.

" 'That in consideration of the premises and the transfer and conveyance aforesaid and of the covenants and agreements herein set forth and contained, to be kept and performed by the party of the second part, the said party of the first part hereby covenants, promises and agrees to and with the said party of the second part, that he will operate said packing house and purchase and slaughter there at least two hundred and fifty thousand hogs during each year, for and during a period of eight years from and after the date of these presents, or their equivalent in cattle or sheep, subject to the conditions hereinafter named, it being the intention and meaning of this contract that the yardage fees accruing to the party of the second part, on the animals so agreed to be slaughtered in each of said years, shall be equal to eight cents per head on at least two hundred and fifty thousand hogs.

" 'If the party of the first part shall in any such year purchase hogs or cattle on which such yardage fees shall have been paid to the party of the second part and shall ship the same alive to any outside point, the yardage thereon shall apply on this contract the same as if the animals were actually killed by the party of the first part at said packing house. The yardage fees

on all animals purchased by the party of the first part outside the stock yards of the party of the second part, shall be paid by the party of the first part at the time such animals are received by him at said stock yards, or if the same be not passed through said stock yards, then at the time they are received at said packing house, and if at the end of any year included in this contract, the amount of yardage fees so paid by the party of the first part and received by the party of the second part, added to the amount of yardage received by the party of the second part on hogs purchased at said stock yards by the party of the first part, shall not equal the sum of $20,000, the difference between the sum so received and the sum of $20,000 shall be paid by the party of the first part to the party of the second part, within twenty days after the close of such year.

"'It is further agreed that in case of the destruction of the packing house hereinbefore described, by fire or other accidental causes, the period during which said packing house shall be rebuilding, shall not be computed as a part of the period of eight years in which said party of the first part is to purchase and pack such cattle or sheep as hereinbefore stated, but such period of rebuilding shall be added to the period of eight years aforesaid.

" 'It is further agreed that the rebuilding contemplated by this stipulation shall be commenced and prosecuted with all reasonable expedition.

" 'It is further agreed by and between the parties hereto, that the said party of the second part will, at the request of the party of the first part, lay such additional railway tracks to the packing house and other works of the party of the first part hereinbefore named, as shall be necessary for conducting the business thereof, and connect said tracks with the tracks of the party of the second part.

" 'And the party of the first part hereby agrees that he will not at any time, so long as the party of the second part continues to perform the stipulations and agreements herein contained, permit any other person or corporation to lay railroad tracks to his packing house and other works, or permit the tracks now on the land herein described, or which may hereafter be placed thereon by the party of the second part, to be connected with any other railway than that owned and operated by the party of the second part.

" 'In witness whereof, the said party of the first part has hereunto set his hand and seal, and the said party of the second part has, by order of the board of directors caused these presents to be signed by its president and attested by its secretary, and its corporate seal to be hereto annexed, the day and year herein written.

" 'JOHN MORAN,        [SEAL]

" ' C. B. FRANCE, President.

" '[SEAL]    St. Joseph Stock Yards & Terminal Co.

[SEAL]

" 'Attest: J. G. SCHNEIDER, Assistant Secretary St. Joseph Stock Yards & Terminal Co.

" 'And whereas, on the 16th day of October, 1894, the said John Moran, sold and conveyed the real estate hereinbefore described to the party of the first part, upon consideration, among other things, that the party of the first part should assume and carry on all the provisions of the contract hereinbefore set forth, which the said party of the first part, having then full knowledge of all the terms of said contract, then and there promised and agreed to do.

" 'Now, therefore, if the said party of the first part shall well and truly keep and perform all the terms of said contract hereinbefore set forth to be kept and performed by the said John Moran, then this deed shall

be void; otherwise it shall remain in full force and effect.

" 'In case the said John Moran and the party of the first part shall fail to perform any of the conditions of said contract, or to pay any sum of money therein specified and provided to be paid by the said John Moran, or in case the said party of the first part shall abandon or become unable to prosecute the business provided in said contract to be carried on and prosecuted, either by its own voluntary act or by its insolvency, or inability to do so, then all sums payable under the terms of said contract to the party of the third part during the continuation thereof for any and all purposes, shall become due and payable and the said party of the second part shall, at the request of the party of the third part or its successors in interest, proceed to sell the property hereby conveyed, or so much thereof as shall be necessary, at public sale, to the highest bidder for cash, at the east door of the courthouse in the city of Saint Joseph, Buchanan county, Missouri, first giving thirty days notice of the time, terms and place of said sale, by advertisement in some newspaper published in the said city of Saint Joseph, and shall out of the proceeds of such sale pay, first, the costs and expenses of the execution of this trust; second, all other costs, expenses and advancements which may have been made by the party of the third part, for the protection of said property or the title thereof, or any other party hereinbefore provided for; third, all sums which may be then unpaid on said contract as hereinbefore provided, and, fourth, the balance, if any, shall be paid to the party of the first part, it successors or assigns.

" 'The said party of the first part covenants and agrees that it will at all times keep all insurable property hereby conveyed insured to its fair insurable value, and the policies of such insurance so made or assigned,

as to be payable, in case of loss, to the said trustees for application upon the debt hereby secured; that it will pay all taxes and assessments of every kind and description that may be assessed or levied against any of said property, promptly when the same shall become due and payable, and that it will do all and every act necessary for the preservation of said property and the title thereof for the purpose of this security, and in case it shall fail to do and perform all acts in this paragraph mentioned, then the party of the second part, or its successor in interest, may at its own expense do and perform the same, and the costs and expenses so incurred shall constitute a part of the indebtedness hereby secured.

" 'In the event of the death or absence from Buchanan county, Missouri, or refusal or failure to act of the said party of the second part, the then acting sheriff of said Buchanan county is hereby appointed as his successor in this trust, and is hereby granted all the rights, powers and privileges, granted to the said party of the second part hereunder.

" 'This indenture is subject to a deed of trust this day made to John Donovan, Jr., trustee, to secure the payment of two notes for $25,000 each to the State National Bank of St. Joseph.

" 'In witness whereof, the said party of the first part has caused this instrument to be signed by its president, attested by its secretary, and its corporate seal to be hereto annexed the day and year first herein written.

" 'JOHN MORAN PACKING Co.,

" 'JOHN MORAN, President.

" 'Attest: CHARLES W. TAYLOR, Secretary.
Seal of John Moran Packing Company.

" 'STATE OF MISSOURI, ⎱ ss.
County of Buchanan, ⎰

" 'On this 18th day of February, A. D. 1895, before me appeared John Moran, to me personally known, who being by me duly sworn, did say that he is the president of the John Moran Packing Company, a corporation, and that the seal affixed to the said instrument is the corporate seal of said corporation, and that the said instrument was signed and sealed on behalf of said corporation by authority of its board of directors, and that the said John Moran acknowledged said instrument to be the free act and deed of said corporation. In witness whereof, I have hereunto set my hand and affixed my official seal the day and year aforesaid.

" 'Signed,                MABEL I. HUMISTON,
" 'Notary Public for Buchanan County.
" 'Seal: Mabel I. Humiston, Notary Public, Buchanan County, Mo. My Commission expires January 20, 1898.

" 'Indorsed. No. 6 John Moran Packing Co., deed of trust to St. Joseph Stock Yards and Terminal Co., filed for record this 19th day of February, 1895, at 10 o'clock and 2 minutes, A. M.

" 'JOEL E. GATES, Recorder.'

"That the contract therein attempted to be secured was the contract entered into between the said St. Joseph Stock Yards & Terminal Company and the said John Moran, on or about the twenty-fifth day of June, 1894, and was the individual contract of the said John Moran, and the said John Moran Packing Company, at no time prior to the execution of the said deed of trust above set out, ever agreed with the said St. Joseph Stock Yards & Terminal Company to assume the performance of said contract, nor did the said St. Joseph Stock Yards & Terminal Company look to any one else

than the said John Moran for the performance of said contract. That in attempting to assume the performance of the conditions of said contract, the said John Moran Packing Company acted without authority, and the said deed of trust so executed is void.

"That at the time of the execution of said deed and at the time of the formation of the said John Moran Packing Company, the said France and the said Donovan, and the said State National Bank, well knew that the packing plant in the city of Saint Joseph, was transferred to said John Moran Packing Company free and clear of any liens, incumbrances or charges for the purpose of paying up the capital stock of said John Moran Packing Company.

"Your petitioner further alleges that if the said John Moran Packing Company had in law or in equity the right to assume the performance of said contract, the said deed of trust above referred to is void, for the reason that the same was executed without any consideration, and that there was no consideration for the change in said contract, by which it was attempted to make the sum of one hundred and sixty thousand ($160,000) dollars due thereunder upon the insolvency of the said John Moran Packing Company.

"That on or about the 18th day of February, 1895, the said Donovan and France and Moran further conspiring together to cheat and defraud your petitioner and all of the general creditors of the said John Moran Packing Company, procured the transfer to said France of a large number of warehouse receipts upon pork and other product owned by the said John Moran Packing Company, and on storage in the warehouses of that company and at other places. That the value of said product so transferred, exceeds the sum of seventy-five thousand ($75,000) dollars, and that said transfer was made for the purpose of securing an

alleged indebtedness of the said John Moran to the said State National Bank of fifty-five thousand or sixty thousand ($60,000) dollars. That there was no pretense that said indebtedness was the indebtedness of the John Moran Packing Company, nor was the John Moran Packing Company legally liable therefor; but the said indebtedness, if any existed, was the individual indebtedness of the said John Moran contracted of said State National Bank before the organization of the said John Moran Packing Company. That said attempt to transfer the assets of the said John Moran Packing Company to secure the individual indebtedness of the said John Moran, was *ultra vires* and fraudulent as to this petitioner and the other creditors of the said John Moran Packing Company.

"That on or about the same time, to wit, the eighteenth day of February, the said Donovan, France, and Moran further conspiring to cheat and defraud your petitioner, as well as the other creditors of the said John Moran Packing Company, caused all of the assets of the said John Moran Packing Company in the said city of Chicago, to be transferred to said France and to said State National Bank, and to said Donovan, as further security for the payment of said sum of fifty thousand ($50,000) dollars and said sum of sixty thousand ($60,000) dollars, as above set forth. And your petitioner avers that in view of the premises, these transfers were without authority and were void and fraudulent as to your petitioner and the other creditors of the said John Moran Packing Company.

"That the property attempted to be transferred in the conveyances above set forth comprises all of the assets and property of the said John Moran Packing Company, except such as are hereinafter mentioned and referred to.

"Your petitioner further alleges that no legal meeting of the directors of the said John Moran Packing Company was ever held for the purpose of authorizing the execution of any of the above conveyances or transfers. And that the said acts were done solely by the said Moran, Donovan, France, Taylor, and Fogarty without authority of the board of directors; that no legal notice of any meeting of the directors was ever given to the directors of the John Moran Packing Company. That a notice of a directors' meeting of said company was given on or about the fourteenth day of February, 1895, said notice being in writing and signed by the said John Moran as president, and the said Taylor as secretary, and addressed to the several directors of said company. That said notice stated that a meeting of the board of directors of said company would be held in the city of Saint Joseph, at the office of Brown & Pratt, 401 German-American Bank building, on Monday, February 18, at 11 o'clock A. M. That no notice of any other meeting of said board was ever given.

"That the said director, Nash, at all times herein mentioned resided in the city of Chicago, Cook county, Illinois, and was in charge of the business of the said John Moran Packing Company at that point. That the said director, Linaker, at the time of the giving of the notice above referred to resided in Kansas City, Missouri. That written notices of said meeting were sent to both said Nash and Linaker, and received by them; but at the same time the said France, Donovan, Moran, Taylor, and Fogarty conspiring together to prevent the said Nash and the said Linaker from attending said meeting, or from receiving any knowledge of the acts they contemplated, caused said Taylor to accompany said notices with letters, in which the said Nash and Linaker were informed that no business of any importance would come before said meeting. That the

affairs of the company were in good shape, and that they had about concluded arrangements with Donovan and France by which they would be enabled to conduct the packing business upon a far larger scale than they had been able to conduct it upon prior to that time. That, relying upon said statements, which were false, and known to said parties to be false at the time they were made, the said Nash and the said Linaker were not present at said meeting. That if any meeting was held by said board of directors, it was held before the time stated in said notice and said deeds of trust and other conveyances were executed, delivered, and filed for record at 10 o'clock in the morning of the eighteenth of February, 1895.

"That under the charter and by-laws of said John Moran Packing Company the directors of said corporation had no power or right to meet outside of the state of Illinois, nor did the meeting so attempted to be held in the said city of Saint Joseph purport to be a regular directors' meeting of said corporation, but was a special meeting, called for a specific purpose.

"That under the laws of the State of Illinois in force at the present time, and at the time of the organization of this company, the directors of such corporation could not legally hold meetings outside of the state of Illinois unless authorized by the by-laws of said company, and even then in all cases when such meetings were held outside of the said state of Illinois, all propositions submitted are required to receive a vote of two thirds of all the directors of such corporation in order to be legally carried. That said law above referred to is shown at section (20), of page thirty-two (32), Illinois Revised Statutes, 1891, and is in words and figures as follows, to wit:

" 'The by-laws of every corporation shall provide for the calling of meetings of directors, trustees, or

other officers corresponding to trustees, and when all such officers shall be present at any meeting called or notified, or shall sign a written consent thereto on the record of such meeting, the acts of such meeting shall be as valid as if legally called and notified; provided that the action of any meeting held beyond the limits of this state shall be void unless such meeting was authorized or its acts ratified by vote of two thirds of the directors, trustees, or officers corresponding to trustees at a regular meeting.'

"That no directors' meeting was ever held in the State of Illinois, either before or after the execution of said instrument and conveyances, for the purpose of authorizing or ratifying any such transfers or any meeting of the board of directors in said city of St. Joseph.

"That since the eighteenth day of February, 1895, the said Donovan and France have been in full charge, possession, and control of all of the assets of the said John Moran Packing Company, and, unless restrained by the order of this court, will proceed to convert all of said assets to their own use, to the great and irreparable injury of plaintiff and the other creditors of said John Moran Packing Company.

"That if the said indebtedness above referred to as held by the defendant, the State National Bank, is in law and equity an indebtedness which the said John Moran Packing Company had the legal right to assume, and the said John Moran Packing Company did assume the payment of said indebtedness, then the said Moran Packing Company is hopelessly and utterly insolvent; but your petitioner alleges that the attempt to assume the payment of said debts was the sole act of said Moran and said Taylor, and was not authorized by the directors of said company, nor was it author-

ized by any resolution of the board of directors of said corporation.

"That said John Moran is the owner, as hereinbefore alleged, of one hundred thousand (100,000) dollars of the capital stock of the said John Moran Packing Company, and the said John Moran is in the entire control of the board of directors of said corporation, for the reason that the said Fogarty, and the said Taylor, although stockholders, received their share in said company by gift from said Moran, and have always sustained the relation to said Moran of employees in said business, and are under his control and direction.

"That in view of the gross fraud to which said Taylor and Fogarty are parties, as hereinbefore alleged, and of the gross mismanagement of the business of said company by its said managing officers, as hereinbefore set forth, your petitioner has suffered a great and irreparable injury, for which it has no adequate remedy at law.

"Wherefore the plaintiff, on behalf of itself and the other creditors of the said John Moran Packing Company similarly situated who may desire to come in, prays that said pretended transfers and conveyances made by the said John Moran Packing Company as aforesaid, to the said Donovan as trustee, and to the said State National Bank, and the said France, be set aside and held for naught.

"That the court, in view of the premises and of the fraud and mismanagement hereinbefore set forth, appoint a receiver to take charge of all the assets of said corporation and of all of the assets so transferred to the defendants, Donovan, France, and State National Bank.

"That the said defendants, the Moran Packing Company, the State National Bank, the St. Joseph

Stock Yards & Terminal Company, John Donovan, Jr., Charles B. France, and John Moran, their agents, servants, employees, and attorneys be restrained and enjoined from receiving or collecting any moneys due said corporation, from selling or disposing of any of the assets of said corporation, or from performing any acts of any kind whatever in relation to the care, management, or disposition of any such assets, and that the said defendants be required to turn over to the receiver of the court all of the assets of said corporation which are in their hands or may hereafter come into their hands.

"That the receiver be required to proceed to dispose of the assets and property of said corporation, under the order of this court, and that the proceeds thereof be applied, first to the necessary costs and expenses incurred in administering this trust, and next to pay off all of the indebtedness of the said John Moran Packing Company, without priority to any creditor or creditors of said company.

"That in the meantime a temporary writ of injunction be issued restraining all of said defendants, their officers, agents, servants, employees, and attorneys from disposing or attempting to dispose of any of the assets of said corporation, receiving any moneys due, or from performing any acts in relation to the care and disposition of said assets, and for all other relief as to the court may seem just and proper."

To this petition defendants State National Bank, Charles B. France, John Donovan, Jr., and the Stock Yards Terminal Company filed a joint demurrer, alleging as grounds therefor the following:

*First.* The petition does not state facts sufficient to constitute a cause of action.

*Second.* That there is a misjoinder of parties defendant, in that these defendants are not necessary

parties to a complete determination of any action the plaintiff may have against the defendants, John Moran Packing Company and John Moran.

The John Moran Packing Company also demurred to the petition upon the ground that the petition "fails to state facts sufficient to constitute a cause of action."

These demurrers, coming on to be heard, were sustained by the court. The plaintiff declining to plead further, final judgment was rendered against it on the demurrers.

Thereupon plaintiff appealed to this court.

This action is prosecuted upon the theory that a direct trust or lien attaches to the property of a corporation in favor of its creditors and that a simple contract creditor of such corporation may maintain an action in equity, with respect to the administration of such assets if the corporation is insolvent although its debt or demand may not be due at the time of the institution of the suit.

There are authorities which sustain this position, among which may be cited the following: *Conro v. Gray*, 4 How. Pr. 166; 2 Mor. on Private Corp., sec. 797; *Bank of St. Marys v. St. John*, 25 Ala. 566; *St. Louis and Sandoval Coal Company v. Edward*, 103 Ill. 472. But the general rule is, that a simple contract creditor whose claim has not been reduced to judgment and who has no express lien by mortgage, trust deed, or otherwise can not come into a court of equity to obtain possession of the assets of the corporation and their application to the satisfaction of his claim, or to have transfers of its property to others not stockholders or directors of the corporation set aside upon the ground of fraud.

It is said in *Terry v. Anderson*, 95 U. S. 628: "Ordinarily, a creditor must put his demand into judgment against his debtor and exhaust his remedies at law before he can proceed in equity to subject choses in

action to its payment.   To this rule, however, there are some exceptions.''

One of these exceptions is when judgment can not be had against the debtor for want of jurisdiction, and the corporation or person in whose possession the assets are, is not liable to statutory garnishment. *Pendleton v. Perkins*, 49 Mo. 565.

In *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371, it is said:   "A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien.   The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor.   That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case.   Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor, all together, give to these simple contract creditors any lien upon the property of the corporation, nor charge any direct trust thereon.''

Mr. Pomeroy in his work on Equity Jurisprudence, section 1415, says:   "It is a necessary result from the whole theory of the creditors' suit that jurisdiction in equity will not be entertained where there is a remedy at law.''

In *Humphreys v. Atlantic Milling Company*, 98 Mo. 542, Mr. Justice BLACK, after having made the above quotation, said:   "This succinct statement of the law is

in accord with the prior rulings of this court.    Whilst
it is not necessary in all cases that the creditor's demand
shall be first put in judgment, it is essential for him to
make out a case which shows that he has no adequate
remedy at law."    *Reyburn v. Mitchell*, 106 Mo. 365;
*Mullen v. Hewitt*, 103 Mo. 639; *Crim v. Walker*, 79 Mo.
335; *Mellier v. Bartlett*, 106 Mo. 381.

This is unquestionably the general rule, and the
facts stated in the petition in this case do not show any
exception to that rule.    The defendants were all served
with process, were subject to the jurisdiction of the
court, and if the allegations of fraud are true, then the
packing company could be sued in attachment and its
personal property in the hands of others could be
reached by garnishment, and its real estate fraudulently
conveyed sold under execution.    *La Grange Butter
Tub Company v. National Bank of Commerce*, 122 Mo.
154, and authorities cited; *Milling Company v. Com-
mission Company*, 128 Mo. 473.

"While a corporation remains in control and has
dominion over its property it may prefer one creditor
over another, may sell all or any part of its property,
or it may be attached at the instance of its creditors,
and with respect to such matters its corporate property
is in no sense a trust fund, and it is only in case of its
insolvency, and when its assets come to be administered,
that a court of equity takes possession of its property
and the trust fund doctrine applies."    *Milling Company
v. Commission Co.*, *supra*.

As the plaintiff had no lien upon its property, the
packing company had the same right to sell, or mort-
gage its property as a private person; and the same
steps necessary to be pursued by a creditor in order to
reach property conveyed or disposed of by the latter
with intent to defraud creditors, must be pursued by
the creditor against the corporation, and before such

creditor can in either case maintain a creditor's bill he must show that he has exhausted all remedy at law, and this the petition in this case does not do; but by this action plaintiff seeks to reach in the hands of parties defendants, not stockholders of the John Moran Packing Company, property which it is claimed by plaintiff was fraudulently acquired by them by fraud and collusion with John Moran, a member and officer of said company and that, too, before plaintiff's demand become due, and before it had taken any steps to avail itself of legal remedies afforded it by law.    The demurrers were, therefore, properly sustained on the ground that the petition states no cause of action against any of the demurrants.

As this disposes of the appeal it is not thought necessary to pass upon other questions raised by the demurrers.

The judgment is affirmed.    GANTT, P. J., and SHERWOOD, J., concur.